IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| and | ) |
| THE STATE OF OHIO, | ) |
| Plaintiffs, | ) CIVIL ACTION NO.: |
| v. | ) |
| CITY OF ELYRIA, | ) |
| Defendant. | ) |

## **COMPLAINT**

Plaintiffs, the United States of America, by authority of the Attorney General of the United States, acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Ohio, by authority of the Ohio Attorney General, acting at the request and on behalf of the Director of the Ohio Environmental Protection Agency ("Ohio EPA") allege as follows:

## **INTRODUCTION**

1. This is a civil action brought by the United States and the State of Ohio against the City of Elyria, Ohio ("Elyria" or "Defendant"), seeking injunctive relief and civil penalties brought under Section 309 of the Clean Water Act ("CWA"), 33 U.S.C. § 1319 and Ohio Revised Code ("ORC") §§ 6111.07 and 6111.09, for Defendant's discharges of pollutants into the Black River and its tributaries in violation of conditions set forth in Defendant's National

Pollutant Discharge Elimination System ("NPDES") permits issued by the Ohio EPA, as authorized by the EPA under Section 402(b) of the CWA, 33 U.S.C. § 1342(b), and in violation of Section 301 of the CWA, 33 U.S.C. § 1311. In addition, the United States seeks enforcement of a Consent Judgment entered in *United States v. Elyria*, Civ. No. 84-3729 (N.D. Ohio May 19, 1986) (attached as Exhibit 1) ("1986 Consent Judgment") requiring Elyria to eliminate its sanitary sewer overflows.

## JURISDICTION, VENUE AND AUTHORITY

2. This Court has jurisdiction over the subject matter of this action pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345, and 1355. Ohio is a party to this action pursuant to CWA Section 309(e), 33 U.S.C. § 1319(e), and 28 U.S.C. § 1367(a).

3. This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367(a) because the state claims are related to the federal claims and form part of the same case or controversy.

4. This Court retains jurisdiction over the 1986 Consent Judgment until it is terminated by order of the Court. 1986 Consent Judgment §§ XIX, XX.

5. This Court has personal jurisdiction over Defendant pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b).

6. Venue is proper in this district pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. § 1391(b), because Defendant is located in this district and the acts or omissions that form the basis of this Complaint occurred within this district.

7. As a signatory to this Complaint, Ohio has actual notice of the commencement of this action in accordance with CWA Section 309(b), 33 U.S.C. § 1319(b).

8. The Attorney General of the United States is authorized to appear and represent the United States in this case pursuant to CWA Section 506, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

9. The Ohio Attorney General is authorized to appear and represent Ohio in this case pursuant to Ohio Rev. Code § 6111.07.

## THE PARTIES

10. Plaintiff, United States of America, is acting at the request and on behalf of the Administrator of the EPA.

11. When the United States sues a municipality of a State, CWA Section 309(e), 33 U.S.C. § 1319(e), requires the joinder of the State as a party. Ohio is a co-plaintiff with the United States in this case.

12. Plaintiff, the State of Ohio, is acting at the request and on behalf of the Director of Ohio EPA.

13. The State of Ohio is a "State" and "person" within the meaning of CWA Section 502(3) and (5), 33 U.S.C. § 1362(3) and (5), and a "person" within the meaning of Ohio Rev. Code § 6111.01(I).

14. Defendant, the City of Elyria, Ohio, is a chartered municipal corporation, organized and existing under the laws of the State of Ohio, and located in Lorain County, Ohio.

3

15. Among other responsibilities, Defendant has authority and control over a Wastewater Treatment Plant ("WWTP"), located at 1194 Gulf Road, Elyria, Ohio, and a sewage collection system that collects sewage from residential, commercial, and industrial sources for the purpose of transporting the sewage for treatment at the WWTP.

16. Defendant's sewage collection and treatment system serves an area covering the City of Elyria and portions of the surrounding area in Lorain County, Ohio.

17. Defendant is a "municipality" and a "person" within the meaning of CWA Section 502(4) and (5), 33 U.S.C. § 1362(4) and (5), and a "person" within the meaning of Ohio Rev. Code § 6111.01(I), and Ohio Adm. Code 3745-33-01(P)(1).

## STATUTORY AND REGULATORY BACKGROUND

18. The CWA is a comprehensive statute designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

19. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of pollutants" into navigable waters by any person except in compliance with a NPDES permit issued by the EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

20. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing authority may issue an NPDES permit that authorizes the discharge of any pollutant directly into navigable waters of the United States, but only in compliance with the applicable requirements of Section 301 of the CWA, 33 U.S.C. § 1311, and such other conditions as the authority determines are necessary to carry out the provisions of the CWA.

21. At all times relevant to this complaint, Ohio EPA has been and continues to be authorized by the Administrator to implement the NPDES permit program for discharges into navigable waters within its jurisdiction pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

22. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the Administrator to commence a civil action for appropriate relief, including a permanent or temporary injunction, when any person violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued under Section 402 of the CWA, 33 U.S.C. § 1342.

23. Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4, Defendant is liable for civil penalties not to exceed $37,500 per day for each violation that occurred after January 12, 2009 through November 2, 2015; and $59,973 per day for each violation that occurred after November 2, 2015.

24. Pursuant to Sections 309 of the CWA, 33 U.S.C. §§ 1319, this court may grant injunctive relief to address violations of the terms and conditions of an NPDES permit issued under Section 402 of the CWA, 33 U.S.C. § 1342.

25. Ohio Rev. Code § 6111.04 prohibits any person from causing pollution or placing or causing to be placed "any sewage, sludge, sludge materials, industrial waste or other wastes in a location where they cause pollution of any waters of the state" unless that person holds a valid, unexpired permit to do so.

26. Ohio Rev. Code § 6111.07(A) prohibits any person from violating any duty imposed by Ohio Rev. Code §§ 6111.01 to 6111.08, any rule adopted pursuant to Ohio Rev. Code Chapter 6111 or any term or condition of a permit issued by the Director of Ohio EPA.

27. Ohio Rev. Code § 6111.07(B) authorizes the Ohio Attorney General to commence a civil action against any person who violates or is threatening to violate Ohio Rev. Code Chapter 6111 or any rule adopted or permit issued pursuant to that chapter.

28. Ohio Rev. Code § 6111.09(A) provides that any person who violates Ohio Rev. Code Chapter 6111 or any rule adopted or permit issued pursuant to that chapter is subject to a civil penalty of up to $10,000 per day for each day of violation.

## 1986 CONSENT JUDGMENT

29. On December 4, 1984, the United States filed suit against the City of Elyria for violations of the CWA and for violations of the City's NPDES permit issued by Ohio EPA. *United States v. Elyria*, Civ. No. 84-3729 (N.D. Ohio May 19, 1986). The parties resolved the suit by means of a Consent Judgment entered on May 19, 1986.

30. The Consent Judgment required the City, *inter alia*, to eliminate "all known, separate sanitary sewer overflows" by December 31, 1993. 1986 Consent Judgment § V.B.9. Appendix A to the 1986 Consent Judgment lists 66 known overflows to be eliminated.

31. On August 1, 1989, the Court entered the parties' agreed modification to the 1986 Consent Judgment to extend certain deadlines unrelated to the violations alleged in this Complaint.

32. No other modifications have been made to the 1986 Consent Judgment and it has not been terminated.

## GENERAL ALLEGATIONS

A. **Elyria's Sewage Collection System**

33. Defendant's sewage collection system collects sanitary sewage and other pollutants from the City of Elyria and portions of the surrounding area in Lorain County, Ohio, an area covering approximately 20 square miles, with a service population of approximately 54,000 people, and conveys it to Defendant's WWTP for treatment.

34. Defendant's sewage collection system consists of approximately 171 miles of pipe and includes both "combined sewers" (i.e., pipes that are designed to convey or store both sewage and stormwater in the same pipe) and "separate sewers" (i.e., two distinct sets of pipes, one set designed to convey or store only sewage and another set designed to convey or store only stormwater). Combined sewers make up approximately 6% of Defendant's sewage collection system.

35. Defendant discharges pollutants from its WWTP, from Sanitary Sewer Overflows ("SSOs") and from Combined Sewer Overflows ("CSOs"), directly into the Black River (including its East and West Branches).

36. The sewage that Defendant conveys or stores in its sewage collection system, and the wastewater that Defendant treats and discharges from one or more of the outfalls at its WWTP contain pollutants.

37. The State of Ohio has established water quality standards, approved by EPA, that describe the desired condition of a water body and the means by which that condition will be protected or achieved. To establish the water quality standards specific to the Black River, Ohio has designated the following water uses for the Black River and its tributaries around Elyria: warmwater habitat and seasonal salmonid habitat for aquatic life, agricultural and industrial water supply, and primary contact recreation. Ohio Admin. Code § 3745-1-27, Table 27-1. Ohio has designated the following water uses for the East and West Branches of the Black River: warmwater habitat for aquatic life, agricultural and industrial water supply, and primary contact recreation. *Id.*

**B.     Elyria's NPDES Permit**

38. On or about September 5, 2008, Ohio EPA issued to Defendant a modified NPDES Permit No. OH0025003 ("2008 Permit"), under the authority of CWA Section 402, 33 U.S.C. § 1342, and the Ohio Water Pollution Control Act, Ohio Rev. Code Section 6111.03. This permit, which became effective on November 1, 2008, was due to expire on June 30, 2012.

39. On or about April 1, 2011, Ohio EPA issued to Defendant a modified NPDES Permit No. OH0025003 ("2011 Permit"), under the authority of CWA Section 402, 33 U.S.C. § 1342, and the Ohio Water Pollution Control Act, Ohio Rev. Code Section 6111.03. The 2011 Permit, which became effective on August 1, 2011, remained in effect until 2021.

40. On or about May 12, 2021, Ohio EPA issued to Defendant a renewed NPDES Permit No. OH0025003 ("2021 Permit"), under the authority of CWA Section 402, 33 U.S.C.

§ 1342, and the Ohio Water Pollution Control Act, Ohio Rev. Code Section 6111.03. The 2021 Permit, which became effective on June 1, 2021, remains in effect.

41. The relevant terms of the 2008 Permit are identical to the terms of the 2011 Permit and the 2021 Permit, although the paragraph numbering changes slightly between the permits. For purposes of this Complaint, the permits hereinafter are referred to collectively as the "NPDES Permit" and any citations will be to the 2021 Permit.

42. Part I.A of the NPDES Permit sets effluent limits for the WWTP's discharges into the Black River.

43. The NPDES Permit does not authorize discharge from SSOs at any time. Part I.B.3.c. of the NPDES Permit states that all sanitary sewer overflows are prohibited.

44. Part II.F.5 of the NPDES Permit prohibits dry weather overflows from Defendant's CSOs at any time.

45. Part II.D of the NPDES Permit authorizes overflows during wet weather periods from 30 designated CSOs, subject to the requirements and limitations of the permit.

46. Part II.H of the NPDES Permit requires Defendant to maintain its WWTP and its sewage collection system in good working order both to comply with the terms of the permit and "to prevent discharges to the waters of the state, surface of the ground, basements, homes, buildings, etc."

47. Part III.2 of the NPDES Permit establishes general effluent limitations that provide, among other things, that effluent shall not be (i) in amounts that will adversely affect

9

aquatic life or water fowl; (ii) in amounts that are toxic to human, animal, or aquatic life; or (iii) in amounts that will impair designated instream or downstream water uses.

48. Defendant's permitted CSOs discharge directly into the Black River or one of its two tributaries, the East Branch of the Black River or the West Branch of the Black River.

49. Part III.11.C. of the NPDES Permit, as required by 40 C.F.R. § 122.41(m), prohibits WWTP bypasses unless unavoidable to prevent loss of life, personal injury, or severe property damage and there are no feasible alternatives.

50. The NPDES Permit does not authorize discharges from any other outfalls or locations in Defendant's sewage collection system other than the outfalls and locations specified in the NPDES Permit.

**FIRST CLAIM FOR RELIEF**
**(SSO Overflows in Violation of NPDES Permit)**

51. Paragraphs 1 through 50 are realleged and incorporated herein by reference.

52. On more than 1,100 occasions since May 3, 2011, Defendant unlawfully discharged pollutants into the Black River or its tributaries from SSOs.

53. Defendant identified the above-referenced unlawful discharges in its Sanitary Sewer Overflow Annual Reports submitted to Ohio EPA.

54. Each of the foregoing discharges constitutes a violation of Defendant's NPDES Permit, and ORC §§ 6111.04 and 6111.07(A).

55. Unless enjoined by the Court, Defendant will continue to discharge pollutants from its SSOs in violation of its NPDES Permit, and ORC §§ 6111.04 and 6111.07(A).

56. Pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), Defendant is subject to injunctive relief and liable for civil penalties not to exceed $37,500 per day for each violation that occurred after January 12, 2009 through November 2, 2015; and $59,973 per day for each violation that occurred after November 2, 2015. Pursuant to ORC §§ 6111.07 and 6111.09, Elyria is subject to injunctive relief and civil penalties payable to the State of Ohio of up to $10,000 per day for each violation.

**SECOND CLAIM FOR RELIEF**
**(CSO Overflows during Dry Weather in Violation of NPDES Permit)**

57. Paragraphs 1 through 50 are realleged and incorporated herein by reference.

58. On at least six occasions between November 2, 2012 and June 3, 2014, Defendant discharged pollutants from one or more of the CSO locations identified in Part II.D of the NPDES Permit during dry weather (*i.e.* times that were not wet weather periods).

59. Defendant identified the above-referenced unlawful discharges in its Combined Sewer Overflow Annual Reports submitted to Ohio EPA.

60. Each of the foregoing discharges constitutes a violation of Defendant's NPDES Permit.

61. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Defendant is liable for civil penalties not to exceed $37,500 per day for each violation that occurred after January 12, 2009 through November 2, 2015. Pursuant to ORC §§ 6111.07 and 6111.09, Elyria is subject to civil penalties payable to the State of Ohio of up to $10,000 per day for each violation.

## THIRD CLAIM FOR RELIEF
### (CSO Discharges in Violation of General Effluent Limits of NPDES Permit)

62. Paragraphs 1 through 50 are realleged and incorporated herein by reference.

63. Defendant routinely and repeatedly discharges pollutants, including without limitation untreated sewage, into the Black River from CSOs during wet weather periods, as identified in its Combined Sewer Overflow Annual Reports submitted to Ohio EPA.

64. Due to a lack of local sewer improvements and in-line storage, the quantity and quality of pollutants discharged from some or all of Defendant's CSOs:

   a. have adversely affected aquatic life or water fowl; or

   b. are toxic to human, animal, or aquatic life; or

   c. are in amounts that will impair designated instream or downstream water uses.

65. In so doing, Defendant has violated general effluent limits A, D, and/or F specified in Part III.2 of Defendant's NPDES Permit.

66. Unless enjoined by the Court, Defendant will continue to discharge pollutants from its CSOs in such quantity and quality that violates its NPDES Permit.

67. Pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), Defendant is subject to injunctive relief and liable for civil penalties not to exceed $37,500 per day for each violation that occurred after January 12, 2009 through November 2, 2015; and $59,973 per day for each violation that occurred after November 2, 2015. Pursuant to ORC §§ 6111.07 and 6111.09, Elyria is subject to injunctive relief and civil penalties payable to the State of Ohio of up to $10,000 per day for each violation.

## FOURTH CLAIM FOR RELIEF
### (Sewage Backups in Homes in Violation of NPDES Permit)

68. Paragraphs 1 through 50 are realleged and incorporated herein by reference.

69. Defendant's records reflect that between May 3, 2011 and September 22, 2021, problems in Defendant's sewage collection system caused at least 69 occurrences of sewage backups into homes ("basement backups"). Defendant's permit requires annual reports regarding reported basement backups and whether the cause of the basement backup was in the city system or the homeowner's line.

70. Defendant identified the above-referenced basement backups in its Sanitary Sewer Overflow Annual Reports submitted to Ohio EPA from 2011 to 2021.

71. These basement backups are in violation of Part II.H of the NPDES Permit.

72. Unless enjoined by the Court, Defendant will continue to discharge to basements, homes, and buildings in violation of its NPDES Permit.

73. Pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), Defendant is subject to injunctive relief and liable for civil penalties not to exceed $37,500 per day for each violation that occurred after January 12, 2009 through November 2, 2015; and $59,973 per day for each violation that occurred after November 2, 2015. Pursuant to ORC §§ 6111.07 and 6111.09, Elyria is subject to injunctive relief and civil penalties payable to the State of Ohio of up to $10,000 per day for each violation.

## FIFTH CLAIM FOR RELIEF
### (Effluent from WWTP in Excess of NPDES Permit Limits)

74. Paragraphs 1 through 50 are realleged and incorporated herein by reference.

13

75. Defendant's NPDES Permit contains limits on the concentrations of certain pollutants likely to be present in the treated effluent from the WWTP, including fecal coliform, selenium, mercury, chlorine and total suspended solids.

76. On at least ten occasions between May 3, 2011 and June 30, 2019, Defendant discharged pollutants from its WWTP in concentrations that violated its NPDES Permit.

77. Each of the foregoing discharges constitutes a violation of Defendant's NPDES Permit.

78. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Defendant is liable for civil penalties not to exceed $37,500 per day for each violation that occurred after January 12, 2009 through November 2, 2015; and $59,973 per day for each violation that occurred after November 2, 2015. Pursuant to ORC §§ 6111.07 and 6111.09, Elyria is subject to civil penalties payable to the State of Ohio of up to $10,000 per day for each violation.

## SIXTH CLAIM FOR RELIEF
### (Bypasses Prohibited by NPDES Permit)

79. Paragraphs 1 through 50 are realleged and incorporated herein by reference.

80. On at least 150 occasions since May 3, 2011, Defendant has bypassed wastewater from the treatment facilities at its WWTP into the Black River.

81. Feasible alternatives existed to prevent or avoid some or all of these bypasses, including but not limited to adding storage and expanding Defendant's WWTP. High rate treatment could also have been used to mitigate the effects of bypasses by reducing the amount of pollutants in the wastewater that bypassed full treatment.

82. Defendant identified the above-referenced unlawful bypasses in its Sanitary Sewer Overflow Annual Reports and/or Discharge Monitoring Reports submitted to Ohio EPA.

83. Each of the foregoing bypasses constitutes a violation of Defendant's NPDES Permit.

84. Unless enjoined by the Court, Defendant will continue to bypass wastewater from its WWTP in violation of its NPDES Permit.

85. Pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), Defendant is subject to injunctive relief and liable for civil penalties not to exceed $37,500 per day for each violation that occurred after January 12, 2009 through November 2, 2015; and $59,973 per day for each violation that occurred after November 2, 2015. Pursuant to ORC §§ 6111.07 and 6111.09, Elyria is subject to injunctive relief and civil penalties payable to the State of Ohio of up to $10,000 per day for each violation.

## SEVENTH CLAIM FOR RELIEF
(Unpermitted Discharges of Pollutants in Violation of Section 301 of the CWA)

86. Paragraphs 1 through 50 are realleged and incorporated herein by reference.

87. Since at least May 2011, Defendant has discharged wastewater on numerous occasions to the Black River through CSOs, SSOs, and bypasses.

88. The Black River, the East Branch of the Black River, and the West Branch of the Black River are perennial tributaries to Lake Erie and waters of the United States.

89. The outfall pipes, manholes, and storm drains, through which the discharges of wastewater occurred are "point source[s]" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

15

90. The wastewater Defendant discharged contained untreated sewage. Sewage is a "pollutant" within the meaning of Section 502(6) of the CWA, 33 U.S.C. § 1362(6).

91. Defendant's discharges of wastewater containing sewage through CSOs, SSOs, and bypasses, were not in compliance with Defendant's NPDES Permit.

92. Each day of each unauthorized discharge of pollutant into waters of the United States constitutes a separate violation of Section 301(a) of the CWA, 33 USC. § 1311.

93. Unless enjoined by the Court, Defendant will continue to discharge pollutants in violation of Section 301(a) of the CWA, 33 USC. § 1311.

94. Pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), Defendant is subject to injunctive relief and liable for civil penalties not to exceed $37,500 per day for each violation that occurred after January 12, 2009 through November 2, 2015; and $59,973 per day for each violation that occurred after November 2, 2015. Pursuant to ORC §§ 6111.07 and 6111.09, Elyria is subject to injunctive relief and civil penalties payable to the State of Ohio of up to $10,000 per day for each violation.

### EIGHTH CLAIM FOR RELIEF
### (Violations of the 1986 Consent Judgment)

95. Paragraphs 1 through 50 are realleged and incorporated herein by reference.

96. Section V.B of the 1986 Consent Judgment required Defendant to eliminate 66 known overflows.

97. Defendant has yet to eliminate 26 of the 66 known overflows identified in the 1986 Consent Judgment.

98. In addition, there are currently three other active SSOs that were identified or developed after entry of the 1986 Consent Judgment.

99. Under paragraph V.B.9 of the 1986 Consent Judgment, Elyria was required to eliminate "all known, separate sanitary sewer overflows" by December 31, 1993.

100. Defendant's failure to eliminate each of the remaining overflows is a violation of the 1986 Consent Judgment.

101. Unless enjoined by the Court, Defendant will continue to violate the terms of the 1986 Consent Judgment and have discharges from known SSOs in violation of the terms and conditions of the 1986 Consent Judgment.

102. Pursuant to Paragraph XVIII of the 1986 Consent Judgment, EPA reserved the right to seek further injunctive relief. The United States now seeks additional injunctive relief from Defendant to assure compliance with the terms of the Consent Judgment – the elimination of all known, separate sanitary sewer overflows.

103. Pursuant to Paragraph IX.A.5 of the 1986 Consent Judgment, the United States reserved the "right to petition the Court to impose penalties for . . . [f]ailure to completely eliminate sewer overflows within 60 days of the date specified in Section V(B)(9), as that date may be extended by Section X (Force Majeure)." The United States requests that the Court impose on Defendant a civil penalty sufficient to deter future noncompliance.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs United States of America and the State of Ohio respectfully request that this Court:

A. Permanently enjoin Defendant from any further violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, ORC Chapter 6111, and all terms and conditions of its NPDES Permit;

B. Order Defendant to expeditiously complete all actions necessary to ensure that it complies with its NPDES Permit and all other applicable requirements of the Clean Water Act and ORC Chapter 6111;

C. Issue a judgment assessing civil penalties against Defendant, and in favor of Plaintiff United States of America, not to exceed $37,500 per day for each violation that occurred after January 12, 2009 through November 2, 2015; and $59,973 per day for each violation that occurred after November 2, 2015;

D. Issue a judgment assessing civil penalties against Defendant, and in favor of Plaintiff State of Ohio, pursuant to ORC § 6111.09 of up to $10,000 per day for each violation;

E. Award Plaintiffs United States of America and the State of Ohio its costs and disbursements in this action; and

F. Grant Plaintiffs such other relief as the Court may deem just and proper.

Respectfully submitted,

FOR THE UNITED STATES:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

*/s/ Lauren D. Grady*
LAUREN D. GRADY
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-2794
Fax: (202) 616-6584
lauren.grady@usdoj.gov


MICHELLE M. BAEPPLER
First Assistant United States Attorney


OF COUNSEL:
JEFFREY A. CAHN
CHRISTOPHER GRUBB
Associate Regional Counsel
United States Environmental
Protection Agency, Region 5 (C-14J)
77 West Jackson Blvd.
Chicago, IL 60604-3590

JACKSON FROLIKLONG
Assistant United States Attorney
United States Courthouse
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
Phone: (216) 622-3818
Fax: (216) 522-2404
Jackson.froliklong@usdoj.gov

FOR THE STATE OF OHIO:

DAVE YOST
Attorney General
State of Ohio

*L. Scott Helkowski*
L. SCOTT HELKOWSKI (0068622)
Assistant Attorney General
30 E. Broad Street, 25th Floor
Columbus, OH 43215-3400
(614) 466-2766
Email: lawrence.helkowski@ohioattorneygeneral.gov