<u>Exhibit 1 to Complaint</u>

1986 Consent Judgment

RECEIVED

MAY 22  11 25 AM '86

U.S. ATTORNEY
CLEVELAND, OHIO

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIVIL ACTION NO. C84-3729 |
| Plaintiff, | ) | JUDGE JOHN M. MANOS |
| v. | ) | CONSENT JUDGMENT |
| THE CITY OF ELYRIA, A MUNICIPAL CORPORATION, and THE STATE OF OHIO, | ) | |
| Defendants. | ) | |

WHEREAS, Plaintiff, United States of America, on behalf
of the United States Environmental Protection Agency ("U.S.
EPA"), filed the complaint herein on December 4, 1984, alleging
that the Defendant City of Elyria ("the City") had violated the
Clean Water Act, 33 U.S.C. §1251, et seq., ("the Act") and the
terms and conditions of its National Pollutant Discharge
Elimination System ("NPDES") Permit No. OH0025003 ("the Permit");

WHEREAS, Defendant, the City of Elyria, Ohio, owns and
operates a wastewater treatment facility at 1194 Gulf Road,
Elyria, Ohio ("the plant") which is alleged by Plaintiff to be in
violation of Section 301 of the Act, 33 U.S.C. §1311, and its
NPDES permit;

WHEREAS, Plaintiff issued an administrative order
pursuant to Section 309 of the Act, 33 U.S.C. §1319, to the
Defendant on September 1, 1983, and alleges that the Defendant
has failed to comply with the terms of this administrative order;

CC: Tom Martin - EPA 6-6-86

WHEREAS, the State of Ohio is a Party Defendant pursuant to Section 309(e) of the Act, 33 U.S.C. §1319(e). The United States has alleged no affirmative acts by the State of Ohio that violate the Clean Water Act. The State shall have no liability under this Consent Judgment except as required by Section 309(e) of the Clean Water Act in the event that the laws of the State prevent the City from raising revenues needed to comply with this Order. The Attorney General of the State of Ohio hereby certifies that the present laws of the State do not prevent the City from raising revenues needed to comply with this Order. On the basis of this representation, the parties do not seek to impose any liability on the State under this Order under present law;

WHEREAS, the State of Ohio has filed a cross-claim against the City;

WHEREAS, the City has demonstrated to the satisfaction of the plaintiff, U.S. EPA and the State of Ohio that construction of a wastewater treatment plant and attainment of final effluent limitations contained in the applicable NPDES permit by July 1, 1988, is a physical impossibility; and

WHEREAS, the United States and the Defendants, by their respective attorneys, having consented to the entry of this consent judgment;

- 2 -

NOW, THEREFORE, before the taking of any testimony, upon the pleadings, and without adjudication of any issue of fact or law herein, or admission by Defendants of any violation or liability, and upon consent of the parties hereto, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## I.  JURISDICTION

The Court has jurisdiction over the parties and the subject matter of this action under 28. U.S.C. §1345 and Section 309 of the Act, 33 U.S.C. §1319. The Complaint and the Cross-Claim state a claim against the City upon which the Court can grant relief.

## II. APPLICABILITY

This consent judgment shall apply to and be binding upon the parties to this action, and the successors and assigns of each, as well as any agencies, officers, directors, agents and servants thereof. The State of Ohio does not agree to the terms of Section X of this consent judgment and does not consent to be bound thereby. The City shall provide a copy of this consent judgment to each contractor that it retains to perform work at the wastewater treatment plant required to be performed under this consent judgment. This consent judgment is entered in full and final settlement of this action.

## III. OBJECTIVES OF THIS CONSENT JUDGMENT

The objectives of this consent judgment include compliance with the Act and regulations promulgated thereunder; the elimination, in accordance with the schedule below, of effluent discharges that violate the effluent limitations of the NPDES permit as defined in Section IV, including effluent limitations based on Ohio State Water Quality Standards; the continued proper operation and maintenance of the plant to ensure the best interim effluent quality possible; and the elimination of all known overflows from separate sanitary sewers and bypasses in the pump stations.

## IV. DEFINITIONS

For purposes of the Consent Judgment, the following definitions shall apply:

Contract 1 - means that part of the consolidated contract which describes the construction of a dike to prevent flood damage to the Elyria wastewater treatment plant and equipment.

Contract 3 - means that part of the consolidated contract which describes the construction of new sludge handling facilities.

Contract 4 - means that part of the consolidated contract which describes the construction of new primary treatment facilities.

Contract 5 - means that part of the consolidated contract which describes the construction of secondary and advanced treatment facilities.

Effluent - means the aqueous discharge from the Elyria wastewater treatment plant.

- 4 -

Effluent limitation or discharge limitation - means any
interim or final restriction imposed on quantities,
discharge rates, and concentrations of specified
pollutant characteristics contained in the aqueous
discharge from the Elyria wastewater treatment plant.

Eliminate or elimination - when used in the context of
sewer overflows means (i) termination of the overflow
itself or (ii) cessation of operation through flow
enhancement.

Load - means the total influent or effluent by weight of
a specified pollutant characteristic which enters or
leaves the Elyria wastewater treatment plant for one
day.

NPDES permit - means National Pollutant Discharge
Elimination System (NPDES) Permit No. OHO025033. The
parties contemplate that, after entry of this Consent
Judgment, the State of Ohio will issue a permit to the
City for its wastewater treatment plant containing final
effluent limitations. The City accepts and may not
challenge in any proceeding the final effluent limits
and monitoring requirements contained in the draft NPDES
permit publicly noticed on October 6, 1985. This shall
not be interpreted as preventing the City from seeking a
variance from or modification to the permit after the
permit has been made effective. The parties recognize
that the terms of the NPDES permit may be modified or
revised during the implementation of this consent
judgment, and that such modifications or revisions are
to be consistent with the Clean Water Act. The parties
intend for the term "NPDES permit" to mean the permit
applicable to discharge from the plant at the time in
question.

Substantially complete - when referring to construction
of the plant, means that stage of construction where all
treatment processes are operational.


V.  REMEDIAL MEASURES AND COMPLIANCE SCHEDULE

Consistent with the objectives of this consent judgment,
the Act, and any applicable NPDES permit, the City shall

- 5 -

undertake improvements at the plant and shall implement a plan
for the elimination of overflows in the sanitary sewer systems
and pump stations in accordance with the schedules below.

A.  Plant Improvements Implementation Schedule

1.  The City has commenced consolidation of Contract
Nos. 1, 3, 4, and 5;

2.  By December 2, 1985, the City shall commence
advertisement on bids for consolidated Contract Nos. 1, 3, 4, and
5;

3.  By January 30, 1986, the City shall open bids on
the consolidated contracts;

4.  By March 18, 1986, the City shall complete bid
evaluation and submit award recommendations to Ohio EPA;

5.  By April 10, 1986, Ohio EPA will authorize award of
Contract Nos. 1, 3, 4, and 5 as consolidated;

6.  By May 1, 1986, the City shall award Contract Nos.
1, 3, 4, and 5 as consolidated;

7.  By May 1, 1986, the City shall have arranged for
financing of the wastewater treatment plant improvements;

8.  On or about August 1, 1986, the City shall commence
construction of plant improvements;

9.  By December 31, 1986, the City shall have in place
adequate flood protection to permit construction of all
facilities on the treatment plant site.

10. By June 1, 1988, the City shall put into operation all treatment processes in Contract 3;

11. By June 1, 1988, the City shall start up temporary phosphorus removal in the primary facilities;

12. By June 1, 1988, the City shall put at least two (2) of the trickling filters into operation. Should operation of the trickling filters cause effluent quality to deteriorate, they may be temporarily disconnected upon receipt of approval from U.S. EPA and Ohio EPA until the time at which start-up of the trickling filters is necessary to assure compliance with final effluent limits by December 31, 1988 (If the City has received no response from U.S. EPA within 10 days of receipt of the City's request to disconnect, then this shall constitute U.S. EPA approval to disconnect and the City may proceed in accordance with Ohio EPA approval.);

13. By August 1, 1988, the City shall put into operation all treatment processes in Contract 4; and

14. By December 31, 1988, the City shall substantially complete construction of, and put into operation, all treatment processes for all contracts (as consolidated) necessary to meet the limits contained in the City's permit.

B. Elimination of Sewer Overflows

The City represents that the overflows and bypasses identified in Exhibit A are all the currently-known overflows and bypasses in the Elyria sanitary sewer system. The City shall

- 7 -

eliminate these overflows and bypasses in accordance with the following schedule:

1.    By January 31, 1986, the City shall submit a detailed schedule to Ohio EPA for implementation of a program to eliminate these sewer overflows and pump station bypasses, which shall include dates by which detailed plans and specifications for construction of each phase of the sewer improvements will be submitted to Ohio EPA.  If at any time during the implementation of this program, additional technical information is developed through engineering studies by the City or its consultants, the City may apply to Ohio EPA for amendments to the program, consistent with the goals of this Consent Judgment.

2.    The City shall submit to Ohio EPA any necessary detailed plans and specifications for construction of the project phases sufficiently in advance of the time for commencement of construction of such phase to allow for Ohio EPA review.

3.    The City shall commence construction of the sewer system improvements as soon as possible, but no later than May 1, 1986.

4.    By December 31, 1988, the City shall complete the work necessary to eliminate all known pump station overflows, identified in Exhibit A.

5.    By December 31, 1988, the City shall complete rehabilitation of the sanitary sewers as recommended in the SSES.

6.    By June 1, 1990, the City shall complete construction of the West Side Interceptor, Contract 1, and

- 8 -

eliminate all overflows shown on Exhibit A for which Contract 1 is proposed as a remedy.

7.   By June 1, 1991, the City shall complete construction of the West Side Interceptor, Contract 3, and eliminate all overflows listed in Exhibit A for which Contract 3 is proposed as a remedy.

8.   By June 1, 1992, the City shall complete construction of the West Side Interceptor, Contract 4, and eliminate all overflows listed in Exhibit A for which Contract 4 is proposed as a remedy.

9.   By December 31, 1993, the City shall have eliminated all known, separate sanitary sewer overflows.

### C.  Operation and Maintenance

The City shall continue to maintain and operate the plant and collection system to minimize equipment breakdowns, interruptions of treatment, and overflows.  Pending attainment of final effluent limits specified in the City's permit, the City shall operate the plant to provide the best effluent quality possible, consistent with meeting the other schedules and obligations in this consent judgment.

The City shall develop an operation and maintenance manual for its new plant by December 31, 1988, and shall begin implementing its procedures as soon thereafter as is possible.

The parties recognize that interruptions in the operation of the treatment plant may be necessary during the period when improvements to the plant are being made.  The City

- 9 -

shall give seven (7) days notice to U.S. EPA and Ohio EPA of all planned interruptions of plant operations.

### D.  Attainment of Final Effluent Limits

By December 31, 1988, the City shall comply with the final effluent limits contained in its permit.

### VI.  COMPLIANCE SCHEDULE REPORTING REQUIREMENTS

A.  Beginning three months after the lodging of this consent judgment and every three months thereafter, the City shall submit to Plaintiff and the Ohio EPA a written report detailing the current status and/or progress of all projects in Section V(A) and V(B) of the consent judgment.  This report shall include, but not be limited to, identification of any items that might affect timely completion, and a projection of the work to be performed under Section V(A) and V(B) of the consent judgment during the next twelve-month period.

B.  In addition to the quarterly reports required in this Section, not later than fourteen (14) calendar days following any date on which an action is required of the City under this consent judgment, the City shall submit to the Ohio EPA and the U.S. EPA written notice that the action has been taken or completed as required.  If the action has not been taken or completed as required, a notice shall be sent to U.S. EPA and Ohio EPA stating the reasons and/or causes for any failure to complete a scheduled action, and the probability of meeting the next milestone in the schedule.  The notice shall also describe

- 10 -

the actions to be taken or that are being taken to return the program elements to the schedule.

VII.  INTERIM EFFLUENT LIMITATIONS AND REPORTING

A.  From the date of entry of this consent judgment until the date specified in Section V(D) of this consent judgment, the City shall comply with the effluent limits specified in Table 1.  The interim effluent limits contained in Table 1 do not constitute an NPDES permit or a modification of any existing permit.  However, the State of Ohio intends that until the wastewater treatment plant improvements attain operational levels as specified in Section V(D) of this consent judgment, the City will be expected to comply with the effluent limits in Table 1 and all monitoring and other requirements of this section.

B.  The City shall submit to U.S. EPA and Ohio EPA postmarked on or before the fifteenth day of each month, a Monthly Operation Report containing analytical test results obtained during the previous monthly monitoring period.  The Monthly Operating Report shall be submitted in the format required by Ohio EPA and shall contain the analysis of samples taken at the frequency and location specified in Table 1.  Except as otherwise noted, each characteristic shall be reported for outfall 001.

C.  Analytical test procedures used shall conform to the rules and regulations promulgated under Section 304(h) of the Act, 33 U.S.C. §1314 and Title 40, Chapter 1, Subchapter D, Part

- 11 -

TABLE 1

Effluent Limitations and Monitoring Requirements for Plant Effluent (Outfall 3PD0003400l)

| | | | DISCHARGE LIMITATIONS | | | | MONITORING REQUIREMENTS | |
|---|---|---|---|---|---|---|---|---|
| | | | Concentration Other Units (Specify) | | Loading* kg/day | | | |
| Code | REPT'G UNITS | PARAMETER | 30 day | 7 day | 30 day | 7 day | Meas. Freq. | Sample Type |
| 50050 | MGD | Flow | 12.0 | — | — | — | Daily | Continuous |
| 00010 | °C | Temperature | — | — | — | — | Daily | Max. Ind. Thermometer |
| 00530 | mg/l | Suspended Solids | 40 | 60 | 1815 | 2722 | Daily | Composite |
| 00310 | mg/l | $BOD_5$ | 54 | 81 | 2450 | 3675 | Daily | Composite |
| 31616 | Count /100ml | Fecal Coliform (summer only) | 1000 | 2000 | — | — | Daily | Grab |
| 00610 | mg/l | Ammonia (N) Summer | — | — | — | — | Daily | Composite |
| | | Winter | — | — | — | — | 1/wk | Composite |
| 00665 | mg/l | Phos.,Total | — | — | | | Daily | Composite |
| 00550 | mg/l | Oil & Grease | — | — | | | Monthly | Grab |
| 00625 | mg/l | Kjeldahl, TKN(N) | — | — | — | — | Daily | Composite |
| 01027 | ug/l | Cadmium | — | — | — | — | 1/wk | Composite** |
| 01034 | ug/l | Chromium | — | — | — | — | 1/wk | Composite** |
| 01042 | ug/l | Copper | — | — | — | — | 1/wk | Composite** |
| 01051 | ug/l | Lead | — | — | — | — | 1/wk | Composite** |
| 72900 | ug/l | Mercury | — | — | — | — | 1/wk | Composite** |
| 01067 | ug/l | Nickel | — | — | — | — | 1/wk | Composite** |
| 01092 | ug/l | Zinc | — | — | — | — | 1/wk | Composite** |

2. The pH (Reporting Code 00400) shall not be less than 6.5 S.U. nor greater than 9.0 S.U. and shall be monitored daily by a grab sample.

3. The Chlorine Residual (Reporting Code 50060) shall be maintained at a level between 0.2 and 0.7 mg/l and shall be monitored daily by a grab sample. (Summer only).

4. The Dissolved Oxygen (Reporting Code 00300) shall be monitored daily by a grab sample.

* The average effluent loading limitations are established using the following flow value: 12.0 MGD

** Weekly composite samples shall be comprised of seven 24-hour composite samples proportionate in volume to the total daily flows (for each of the seven consecutive calendar days). Each of the 24-hour composite samples shall be comprised of a series of grab samples collected over a 24-hour period and proportionate in volume to the sewage flow rate at the time of sampling. Such samples shall be collected at such times and locations, and in such a fashion, as to be representative of the facility's overall performance.

136 Guideline Establishing Test Procedure for the Analysis of Pollutants.

VIII. STATE APPROVAL AND FACILITY CONSTRUCTION

This consent judgment does not authorize or approve the construction of any physical structure or facilities, the modification of any existing treatment works, or the undertaking of any work in any navigable waters. Any approval for such construction shall be by permit issued by the Ohio EPA or such other permits as may be required by applicable county, state, or federal laws, rules or regulations. This consent judgment does not constitute a permit to discharge pollutants under the Act, or a modification of any existing permits.

IX. PENALTIES

A. Consistent with this section, plaintiff reserves the right, after giving written notice to the City, to petition the Court to impose penalties for violation of the following section(s) of this consent judgment:

1. Violations of the 30-day interim effluent limits for pollutants specified in Table 1 of Section VII;

2. Failure to complete the construction required under Section V(A) by the date specified in Section V(A)(14), as that date may be extended by Section X (Force Majeure);

3. Failure to achieve and maintain final effluent limits specified in the NPDES permit, except ammonia-nitrogen, sixty days after the date specified in Section V(A)(14), as that date may be extended by Section X (Force Majeure);

4. Failure to achieve and maintain final ammonia-nitrogen limits specified in the NPDES permit,

ninety days after the date specified in Section V(A)(14), as that date may be extended by Section X (Force Majeure);

5.    Failure to completely eliminate sewer overflows within 60 days of the date specified in Section V(B)(9), as that date may be extended by Section X (Force Majeure).

B.    After a hearing at which any evidence of good faith and any evidence admissible pursuant to the Federal Rules of Evidence may be offered by either party, the Court may award penalties in an amount to be determined by the Court.

C. All penalties ordered by the Court shall be paid by cashier's or certified check made payable to the Treasurer of the United States of America and tendered to the United States Attorney, 1404 East Ninth Street, Cleveland, Ohio, 44114-1748, within thirty (30) days of the Court's order imposing penalties.

D.    The payment of any such future penalties ordered by the Court shall be subordinate to repayment of the principal and interest requirements for the financing required to implement Sections V(A) and V(B) hereof.  This provision for subordination applies to payments from City sewer revenues and funds, and not to other funds or sources available to the City to pay any penalties that may be ordered by this Court.

## X.  FORCE MAJEURE

A.    If any event occurs which causes or may cause a violation of any provision of this consent judgment by the City, the City shall notify the Court, the U.S. EPA, and Ohio EPA in writing within twenty (20) days of the date on which the City is

- 13 -

informed of such event.  The notice shall describe in detail the
anticipated length of time the violation may persist, the precise
cause or causes of the violation, the measures taken and to be
taken by the City to prevent or minimize the violation, and the
timetable by which those measures will be implemented.  The City
will adopt all reasonable measures to avoid or minimize any such
violation.  The City shall make all reasonable efforts to
identify events which cause or may cause a violation of this
consent judgment.

B.    If any violation of this judgment occurs which is
caused by circumstances beyond the reasonable control of the
City, the City shall be excused as to that violation for the
period of time the violation continues due to such circumstances.
The City's time for performance shall be extended for a period
not exceeding the delay actually resulting from such
circumstances.  In the event the parties cannot agree, any party
may submit the matter to this Court for resolution.  The burden
of proving that any delay was caused by circumstances beyond the
reasonable control of the City and the length of such delay shall
rest with the City.  Failure by the City to comply with the
notice requirements of this Section shall render this Section
void and of no force and effect as to the particular incident
involved, and constitutes a waiver of the City's right under this
provision to obtain an extension of its obligation based on that
incident.

- 14 -

C.    Compliance with any requirement of this consent judgment, by itself, shall not constitute compliance with any other requirement.  An extension of one compliance date based on a particular incident does not necessarily effect an extension of a subsequent compliance date or dates.  The City must make an individual showing of proof regarding each delayed incremental step or other requirement for which an extension is sought.

D.    The parties specifically reserve any and all legal remedies and defenses available under this consent judgment.

## XI.  CIVIL PENALTY

A.    Thirty (30) days after the entry of this Order the City shall pay in cash a civil penalty of One Hundred Thirty Thousand Dollars ($130,000.00).  Payment of this penalty shall be by cashier's or certified check made payable to the Treasurer of the United States of America, and tendered to the United States Attorney, 1404 East Ninth Street, Cleveland, Ohio 44114.

B.    In addition to the requirements imposed by Section XI(A) of this consent judgment, the City agrees to spend an amount which the City estimates to be approximately $625,000.00, to plan, fund, and implement, or cause to be implemented, the construction of two (2) additional trickling filters to be installed in the plant.  The Plaintiff and the City agree that the estimated value of this project is $625,000.00.  These additional trickling filters shall be substantially identical to

- 15 -

those designed to be installed in the plant as a part of Contract 5.

U.S. EPA and the City agree that installation and operation of the two (2) additional trickling filters:

1. addresses the particular type of environmental effects of the City's non-compliance with the Act which formed the basis of this civil action; and

2. will be in addition to any obligation to abate the non-compliance which is the subject of this action, and in addition to any obligation required of City by law; and

3. will redound to the benefit of the general public.

C. 1. Should the City exclude either or both of the two (2) additional trickling filters from the scope of work described in Contract 5, or thereafter fail to make continuing effort to assure timely completion of both trickling filters, the City shall, upon demand, remit by certified or cashier's check the amount of Six Hundred Twenty-Five Thousand Dollars ($625,000.00) (or that amount representing the work not undertaken) to the Treasurer of the United States within thirty (30) days of demand. If the City contests the validity of the demand, it may apply to the Court for resolution of the dispute.

2. Assuming the City has undertaken to install the two additional trickling filters, but completion of that installation is delayed beyond the date specified in Section V(A)(14) of this consent judgment, U.S. EPA, after giving written notice to the City, may apply to the Court seeking an assessment

- 16 -

of a penalty in accordance with the procedures specified in Section IX(B) and (C) of this consent judgment.

3.    The payment of any such future penalties under this Section XI(C) shall be subordinate to repayment of the principal and interest requirements for the financing required to implement Sections V(A) and V(B) hereof.  This provision for subordination applies to payments from City sewer revenues and funds, and not to other funds or sources available to the City to pay any penalties that may become owing under this Section.

D.    The Plaintiff and the City agree that construction and operation of the trickling filters is being undertaken by the City to satisfy the conditions of Section XI(B)(1) through (3), and that the filters are not intended to replace or to be the cause of abandonment of other equipment within the plant, but that they shall operate in addition to all other equipment in the plant.

## XII.  COMPLIANCE WITH OTHER STATUTES/REGULATIONS

Nothing herein shall be construed as relieving the City of the duty to comply with all applicable Federal, State and Local laws and regulations and the applicable NPDES permit. During the pendency of the consent judgment, actions taken to enforce applicable laws and regulations shall be consistent with the provisions, terms and conditions of this consent judgment. Nothing in this Consent Judgment shall be construed to limit the

right of the State of Ohio to seek the remedies available under state law for violation of applicable state laws.

## XIII.  RIGHT OF ENTRY

Consistent and in accordance with rights of entry under Federal, State, and Local law, regulation or permit, U.S. EPA and its contractors and consultants, and attorneys for the United States have authority to enter any facility covered by this consent judgment, upon proper presentation of credentials, for the purpose of:

A.    Monitoring the progress of activity required by this consent judgment; and

B.    Verifying any data or information submitted to U.S. EPA in accordance with the terms of this consent judgment; and

C.    Obtaining samples, and, upon request, splits of any samples taken by the City or its consultants.

## XIV.  FEDERAL FUNDING

Performance of the terms of this consent judgment is not conditional on the receipt of any Federal or State grant funds. In addition, performance is not excused by the lack of any Federal or State grant funds, or by the processing of any applications for the same.

## XV.  SEVERABILITY

The provisions of this consent judgment shall be severable, and should any provision be declared by a court of

competent jurisdiction to be unenforceable, the remaining provision of this consent judgment shall remain in full force and effect.

## XVI. REPORT SUBMITTALS

Reports or notices required pursuant to this consent judgment shall be submitted to the following addresses:

For Plaintiff:

U.S. Environmental Protection Agency, Region V
Water Division
Compliance Section 5WQC-TUB-8
230 South Dearborn Street
Chicago, Illinois 60604

For Ohio EPA:

Ohio Environmental Protection Agency
Northeast District Office
2110 East Aurora Road
Twinsburg, Ohio 44806

## XVII. INJUNCTION

The City is permanently enjoined from violating the provisions of Chapter 6111 of the Ohio Revised Code.

## XVIII. CAUSE OF HEARING

Any party may apply to this Court for such further orders and directions as may be appropriate. U.S. EPA reserves

- 19 -

the right to seek, in addition to or in lieu of penalties,
injunctive relief.

## XIX. RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this matter until
this consent judgment is terminated in accordance with Section XX
below.

## XX. TERMINATION

With the exception of those provisions of this consent
judgment which require the City to correct sewer and pump station
overflows [Section V(B)], and impose penalties pursuant to
Section IX for the City's failure to complete sewer overflow
corrections by date certain [Section V(B)(9)], the provisions of
this consent judgment shall terminate upon certification by U.S.
EPA to the Court that the City has completed the plant
improvements [Section V(A)] and achieved and maintained
compliance with the final effluent limitations specified in the
City's then-existing NPDES permit for one year. All other
provisions of the consent judgment shall terminate upon
elimination of the sewer overflows and bypasses specified in
Section V(B). Until all sewer system work described in Section
V(B) is completed, any party may apply to the Court pursuant to
the provisions of Section XVIII (Cause of Hearing). Termination
of the consent judgment shall be by order of the Court upon

application by any party. The permanent injunction in Section

XVII shall not be terminated by this Section.

IT IS SO ORDERED:

Date: 5/19/86

John M. Manos
UNITED STATES DISTRICT JUDGE

Approved for entry without further notice.

CITY OF ELYRIA, OHIO

By: _____
        Mayor

_____
Van Carson
Squire, Sanders & Dempsey
1800 Huntington Building
Cleveland, Ohio 44115
Attorney for the City of Elyria

Approved as to form:

By: _____
        George Ferguson
        Solicitor, City of Elyria

UNITED STATES OF AMERICA

By: _____
        F. Henry Habicht, II
        Assistant Attorney General
            for Land and Natural
            Resources
        U.S. Department of Justice
        Washington, D.C. 20530

By: _____
        Courtney M. Price Acting
        Assistant Administrator for
            Enforcement and Compliance
            Monitoring
        U.S. Environmental
            Protection Agency
        401 M Street, S.W.
        Washington, D.C. 20460

By: _____
        Valdas V. Adamkus
        Regional Administrator
        U.S. Environmental Protection
        Agency, Region V
        230 South Dearborn Street
        Chicago, Illinois 60604

- 21 -

THE STATE OF OHIO

By: _____
Terrence Fay
Assistant Attorney General
Environmental Enforcement
  Section
30 East Broad Street
17th Floor
Columbus, Ohio 43215

By: _____
Patrick M. McLaughlin
United States Attorney
Northern District of Ohio
1404 East Ninth Street,
  Suite 500
Cleveland, Ohio 44114

- 22 -

ELYRIA SANITARY SEWER OVERFLOW PROGRAM

LISTING OF OVERFLOWS AFFECTED BY

VARIOUS CORRECTIVE PROCEDURES

Code #　　　　Location

West Side Interceptor Contracts #1 and #3

| | |
|---|---|
| 100 | Gulf Road at Dilworth Street |
| 101 | Glenwood Street and Washington Avenue |
| 111 | Floradale siphon head chamber |
| 112 | West River Road at OTP siphon head chamber |
| 240 | Gulf Road at Lafayette Street |

West Side Interceptor Contract #4

| | |
|---|---|
| 131 | Lake Avenue at bridge |
| 143 | West Avenue at Barres Lane |
| 147 | West Avenue between Oberlin Road and 18th Street |
| 260 | West end of West 6th Street |
| 261 | Between West 6th Street and Earl Court |
| 262 | West end of Earl Court |

District 2 Relief Sewer

| | |
|---|---|
| 238 | 840 Livermore |
| 239 | North West corner of Salem and Salem |

District 10 and 11 Relief Sewer

| | |
|---|---|
| 122 | Foster Avenue between Lake Avenue and Adams Street |
| 230 | Woodland Avenue at Foster Street |
| 231 | Woodland Avenue at Spruce Street |
| 232 | Woodland Avenue at Oak Street |
| 233 | Woodland Avenue at Walnut Street |
| 235 | High Street at Adams Street |
| 236 | High Street between Lake Avenue and B&O Railroad |

| Code # | Location |
|--------|----------|

**District 6A and 9 Relief Sewer**

| | |
|-----|----------------------------------------------------------|
| 190 | East River Street between Smith Court and East Bridge Street |
| 192 | East River Street at Denison Avenue |
| 193 | East River Street at Riverdale Court |
| 194 | East River Street at Columbia Avenue |
| 195 | Sherman Street at Harvard Avenue |
| 196 | Sherman Street at Cornell Avenue |
| 197 | Sherman Street at Denison Avenue |
| 199 | Sherman Street at Columbia Avenue |
| 202 | Park Avenue at Kenyon Avenue |
| 203 | Park Avenue at Oxford Avenue |
| 204 | Park Avenue at Cambridge Avenue |
| 205 | Park Avenue at Princeton Avenue |
| 206 | Park Avenue at Eastern Heights Avenue |
| 207 | Park Avenue at Harvard Avenue |
| 208 | Park Avenue at Cornell Avenue |
| 209 | Park Avenue at Denison Avenue |
| 211 | Park Avenue at Columbia Avenue |
| 213 | Columbia Avenue between Park Avenue and Garford Avenue |
| 214 | Garford Avenue at Columbia Avenue |
| 271 | Denison Avenue between Park Avenue and Garford Avenue |

**Overflows to be Corrected by Rehabilitation**

| | |
|------|----------------------------------------------|
| 219  | Fairlawn at Harvard |
| 220  | Fairlawn at Cornell |
| 221  | Winkles at Clark |
| 281  | Winkles south of Cleveland Street |
| 114  | West Bridge Street at bridge |
| 115  | West River Road between Hazel and Turner Streets |
| 250  | West River Road at West 3rd Street |
| 251  | Turner Street alley |
| 252  | Turner Street at siphon head chamber |
| 270  | Cross Street between Mound Street and Quincy Avenue |
| 280  | Overbrook Road at west end |
| 309A | Pinewood at East Branch Black River |

**Overflows Not Known to be Functioning**

| | |
|-----|-------------------------------------|
| 106 | 12th Avenue near Middle Avenue |
| 189 | Lincoln at Blain |
| 310 | Greenfield Estates (Hemlock at Gulf) |

| Code # | Location |
|--------|----------|

**Pump Station Overflows**

| 302 | West Eighth Street |
|-----|--------------------|
| 303 | Elizabeth Street |
| 304 | Mound Street |
| 306 | Tannery Street (on influent sewer to pump station) |
| 307 | Water Street |
| 308 | West River Road |
| 309 | Pinewood Drive |
| 311 | Holiday Inn – Midway Mall |
| 312 | East of Gulf Road entrance to WPCP |
| 313 | Locust Street at John Street |

**Mendel Court Pump Station**

| -- | Mendel Court at Florence Court |
|----|--------------------------------|