IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE STATE OF OHIO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:22-cv-02026-DCN |
| | ) | |
| THE CITY OF ELYRIA, OHIO, | ) | Hon. Donald C. Nugent |
| | ) | |
| Defendant. | ) | Hon. Thomas M. Parker |
| | ) | |

**<u>CONSENT DECREE</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1
II.     JURISDICTION AND VENUE ......................................................................... 3
III.    APPLICABILITY ............................................................................................... 3
IV.    OBJECTIVES ..................................................................................................... 4
V.      DEFINITIONS ..................................................................................................... 4
VI.    COMPLIANCE REQUIREMENTS .................................................................. 7
VII.    REVIEW, APPROVAL, AND IMPLEMENTATION OF DELIVERABLES .............. 12
VIII.   REPORTING REQUIREMENTS ..................................................................... 13
IX.    CIVIL PENALTY ............................................................................................. 15
X.      STIPULATED PENALTIES ............................................................................ 16
XI.    FORCE MAJEURE .......................................................................................... 18
XII.    DISPUTE RESOLUTION ................................................................................ 19
XIII.   RIGHT OF ENTRY AND INFORMATION COLLECTION AND RETENTION ........ 21
XIV.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ........................ 22
XV.    COSTS ............................................................................................................. 23
XVI.   NOTICES ......................................................................................................... 23
XVII.   EFFECTIVE DATE .......................................................................................... 26
XVIII.   RETENTION OF JURISDICTION .................................................................. 26
XIX.   MODIFICATION ............................................................................................. 26
XX.    TERMINATION ............................................................................................... 27
XXI.   PUBLIC PARTICIPATION ............................................................................. 27
XXII.   SIGNATORIES/SERVICE .............................................................................. 28
XXIII.   INTEGRATION ............................................................................................... 28
XXIV.   FINAL JUDGMENT ........................................................................................ 29
LIST OF CSOs ..................................................................................................... APPENDIX A
LIST OF SPECIFIED UNPERMITTED SSO LOCATIONS ................................... APPENDIX B
INTEGRATED WET WEATHER CONTROL PLAN .......................................... APPENDIX C
POST-CONSTRUCTION MONITORING ............................................................ APPENDIX D
CAPACITY, MANAGEMENT, OPERATION & MAINTENANCE PROGRAM ... APPENDIX E

# I.  INTRODUCTION

WHEREAS, Plaintiff United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), and Plaintiff the State of Ohio ("State"), on behalf of the Ohio Environmental Protection Agency ("Ohio EPA"), have filed a complaint in this action ("Complaint") concurrently with this Consent Decree alleging that the Defendant, the City of Elyria, Ohio, ("Elyria") violated Section 301 of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, and regulations promulgated thereunder; Ohio Rev. Code Ann. § 6111 and rules promulgated thereunder; and certain terms and conditions of the National Pollutant Discharge Elimination System ("NPDES") permits issued to Elyria pursuant to the CWA relating to the municipal wastewater treatment plant ("WWTP") and sewer system owned and operated by Elyria ("Sewer System");

WHEREAS, Elyria does not admit any liability to the United States or the State arising out of the transactions or occurrences alleged in the Complaint;

WHEREAS, in 1984, the United States sued Elyria for violations of the CWA arising from discharges from its sewer collection system and WWTP. In 1986, the parties entered into a Consent Judgment that required Elyria to build a dike around its WWTP to prevent flood damage, construct a new sludge handling facility and install new primary and secondary treatment facilities at the WWTP. *See United States v. Elyria and State of Ohio*, Civil Action No. 84-3729 (N.D. Ohio May 19, 1986). The 1986 Consent Judgment also required Elyria to make improvements necessary to meet its NPDES Permit final effluent limits, eliminate a number of overflows, and eliminate all bypasses at Elyria's WWTP and from several pump stations. Elyria made the required improvements to its WWTP and various improvements to its collection system, including construction of the West Side interceptor, but did not eliminate all overflows and bypasses identified in the 1986 Consent Judgment;

WHEREAS, pursuant to its NPDES Permit, in November 2008, Elyria submitted to Ohio EPA a proposed Combined Sewer Overflow Long Term Control Plan ("2008 Draft LTCP"), Sewer System Characterization Report and a proposed System Evaluation and Capacity Assurance Plan ("SECAP"), all of which were made available for public review for at least 18 days, and for which Elyria held a public meeting on November 18, 2008, but received no public comments;

WHEREAS, on May 2, 2011, Elyria submitted to Ohio EPA a Wet Weather Plan Summary and Proposed Schedule that consolidated projects from the 2008 Draft LTCP, the 2008 SECAP, and a 2010 Evaluation of Feasible Alternatives to Wet Weather Bypasses (the "2011 Wet Weather Control Plan");

WHEREAS, Elyria has worked closely with the EPA and Ohio EPA to develop a comprehensive Integrated Wet Weather Control Plan that updates the 2011 Wet Weather Control Plan and addresses the construction and implementation of WWTP and Sewer System improvements and other measures with the goal of: (i) reducing the number, duration, and volume of wet weather Combined Sewer Overflows ("CSOs"); (ii) ensuring that any CSOs that do occur during wet weather comply with the technology and water quality-based requirements of the CWA, state law, any applicable federal and state regulations, and Elyria's NPDES Permit;

1

and (iii) eliminating Sanitary Sewer Overflows ("SSO"). This updated Integrated Wet Weather Control Plan is attached to this Consent Decree as Appendix C. The Integrated Wet Weather Control Plan serves as Elyria's Long Term Control Plan and is intended to satisfy the requirements of EPA's Combined Sewer Overflow Control Policy found at 59 Fed. Reg. 18,688 (April 19, 1994);

WHEREAS, Elyria began implementing the 2011 Wet Weather Control Plan in 2012, and has initiated or completed several projects identified in the Integrated Wet Weather Control Plan including: Turner Street Pump Station, Pinewood & Overbrook Pump Station, Cascade Siphon & Bottleneck, Intermediate Storage Tank Wet Weather Storage, East Avenue Relief Sewer, WWTP Sludge Thickening, WWTP Disinfection Upgrade, WWTP Final Storage Tank #6/#7/#8 Improvements, control of Overflow 132, and elimination of CSO 170. Elyria has also completed construction of several phases of the new East Side Relief Sewer (Phases 1A, 1B North, 1B South, 1C, and 1CT). Elyria anticipates initiating two other construction projects in 2022:  Phase 1D of the East Side Relief Sewer (to be completed over 3 years) and increasing the primary/secondary wet weather treatment capacity of the WWTP to 40 MGD (to be completed over 5 years). This Consent Decree sets forth additional improvements that are planned over a 15-year period (2020-2034), followed by a 10-year period in which further collection system efforts are planned to address specified CSOs and SSOs;

WHEREAS, Elyria maintains a comprehensive log of "Water in Basement Occurrences" that includes the date and address of every report of a sewer system backup into a building or other private property.  Additional detail about those backups that were the responsibility of the City is compiled and included in its Annual SSO Report submitted to Ohio EPA. In some cases, sewer backups can present the potential for direct human contact to pathogens. The City responds to reports of basement backups and addresses those that are caused by features in its system beyond the homeowner's private lateral. The Plaintiffs desire to continue monitoring such occurrences and Elyria's response, with particular focus on those that fall within the responsibility of the City. The projects set forth in Elyria's Wet Weather Control Plan are expected to greatly reduce, if not eliminate, the vast majority of basement backups that are not caused by the property owner's lateral sewer line;

WHEREAS, the United States, the State, and Elyria (referred to herein collectively as the "Parties" and individually as a "Party") intend to resolve all alleged violations of the Consent Judgment, together with the violations alleged in the Complaint, and replace the Consent Judgment with this Consent Decree;

WHEREAS, today, Elyria's wastewater collection system contains approximately 170 miles of sewers that collect municipal sewage (which includes domestic, commercial, and industrial wastewater) from approximately 21,000 residences and almost 400 industrial and commercial properties. The total drainage area contained within the Elyria wastewater collection system is approximately 21 square miles. Elyria's WWTP currently treats an average of approximately 9 million gallons per day (MGD) of wastewater and has a maximum wet weather secondary treatment capacity of 30 MGD (to be increased to 40 MGD under the Integrated Wet Weather Control Plan) with wet weather storage capacity of 3.4 million gallons;

2

WHEREAS, since at least 1984, when the Black River was identified as a Great Lake Area of Concern by the International Joint Commission, the Black River and its tributaries have been the subject of much study and effort to improve its water quality under the Black River Remedial Action Program. Further control of Elyria's WWTP discharges and elimination or control of outfalls and bypasses will further improve the Black River's water quality;

WHEREAS, Elyria is committed to ongoing efforts that improve the quality of the Black River for its aquatic inhabitants, the wildlife and birds that live along its banks, and Elyria's residents. At the same time, Elyria seeks to achieve these improvements without causing undue financial hardship for its residents and in a manner that provides opportunities for growth and flexibility for their future;

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section II (Jurisdiction and Venue), and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II.  JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and over the Parties. Venue lies in this District pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because Elyria is located in this judicial district and the alleged violations occurred in this District. The Complaint states claims upon which relief may be granted. Authority for the United States to bring its action is vested in the United States Department of Justice pursuant to Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519; authority for the State to bring its action is vested in the Ohio Attorney General pursuant to Ohio Rev. Code Ann. §§ 6111.07 and 6111.09.

2.      For purposes of this Consent Decree or any action to enforce this Consent Decree, Elyria consents to the Court's jurisdiction over this Consent Decree, over any action to enforce this Consent Decree, and over Elyria. For purposes of this Consent Decree, Elyria agrees that the Complaint states claims upon which relief may be granted. Elyria also consents to venue in this judicial district.

## III.  APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States, the State, and upon Elyria and any of its successors and assigns, its officers, directors, employees, and agents in their capacities as such, and all other persons and entities as provided for in Fed. R. Civ. P. 65(d).

4.      No transfer of ownership or operation of the WWTP, the Sewer System, or any portion of the WWTP or Sewer System, whether in compliance with the procedures of this

Paragraph or otherwise, shall relieve Elyria of its obligation to ensure that the terms of this Consent Decree are implemented. At least 30 Days prior to such transfer, Elyria shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to the State, EPA, the United States Attorney for the Northern District of Ohio, and the United States Department of Justice, in accordance with Section XVI (Notices). Any attempt to transfer ownership or operation of the WWTP, the Sewer System, or any portion of the WWTP or Sewer System without complying with this Paragraph constitutes a violation of this Consent Decree.

5.      Elyria shall provide a copy of this Consent Decree to all officers, employees, and agents of Elyria whose duties might reasonably include compliance with any provision of this Consent Decree, and shall make an electronic copy available to any contractor retained by Elyria to perform work required under this Consent Decree. Elyria shall include all information and requirements in any such contract as is necessary to ensure that the work performed is in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Elyria will not raise as a defense the failure of its officers, directors, agents, contractors, employees or any other persons or entities provided for in Fed. R. Civ. P. 65(d) to take any actions necessary to comply with the provisions of this Consent Decree.

## IV.  OBJECTIVES

7.      It is the express purpose of the Parties in entering into this Consent Decree to require Elyria, through implementation of its Integrated Wet Weather Control Plan, to take all measures necessary to fulfill the objectives of the CWA, to achieve and maintain compliance with the CWA, Ohio Rev. Code Ann. § 6111, its NPDES Permit, and any applicable Federal and State regulations, including, but not limited to, the elimination of Unauthorized Releases, SSOs and Dry Weather Overflows from the Sewer System and WWTP, and the reduction of discharges from the CSO outfalls listed in the NPDES Permit.

## V.  DEFINITIONS

8.      Terms used in this Consent Decree that are defined in the CWA, 33 U.S.C. § 1251, *et seq.*, or in federal regulations promulgated pursuant to the CWA at 40 C.F.R. Part 122 shall have the meanings assigned to them in the CWA or such regulations, unless otherwise provided in this Consent Decree. Terms used in this Consent Decree that are not defined in the CWA or in federal regulations promulgated pursuant to the CWA, but that are defined in Ohio Rev. Code Ann. § 6111 or in state regulations promulgated pursuant to Ohio Rev. Code Ann. § 6111, shall have the meanings assigned to them in Ohio Rev. Code Ann. § 6111 or such regulations, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "Achievement of Full Operation" or "Achieve Full Operation" or "AFO" shall mean completion of construction and installation of equipment or infrastructure such that the equipment or infrastructure has been placed in full operation and is expected to both function and perform as designed; all shakedown and related activities are complete; all operations and

4

maintenance manuals are complete, including as modified during shakedown and related activities; and all control systems and instrumentation necessary for normal operations and all residual handling systems are installed and operational. Certain specified Control Measures set forth in Appendix C consist of separate projects or components. For those specified Control Measures, "Achievement of Full Operation" shall not be achieved until the last project or the last component is installed and operational.

b.      "Building/Private Property Backup" shall mean a release of municipal sewage (which includes domestic, commercial, and industrial wastewater) that may or may not also include stormwater into a building or onto private property that is caused in whole or in part by blockages, flow conditions, or other conditions in the Sewer System.

c.      "Bypass" shall have the meaning set forth in 40 C.F.R. § 122.41(m).

d.      "Combined Sewer Overflow" or "CSO" shall mean any discharge from a CSO Outfall.

e.      "Combined Sewer Overflow Outfall" or "CSO Outfall" shall mean a location designated in Appendix A, or as may be so designated in Elyria's NPDES Permit.

f.      "Combined Sewer Overflow Policy" or "CSO Policy" shall mean the policy issued by EPA regarding combined sewer overflows, entitled "Combined Sewer Overflow Control (CSO) Policy," 59 Fed. Reg. 18,688 (April 19, 1994), 33 U.S.C. § 1342(q).

g.      "Complaint" shall mean the complaint filed by the United States and the State in this action.

h.      "Consent Decree" or "Decree" shall mean this Consent Decree and all appendices hereto.

i.      "Control Measures" shall mean the Control Measures listed in Appendix C.

j.      "Date of Lodging of this Consent Decree" or "Date of Lodging" shall mean the date that this Consent Decree is filed for lodging, pending solicitation of public comment, with the Clerk of the Court for the United States District Court for the Northern District of Ohio.

k.      "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

l.      "Design Criteria" shall mean numeric and narrative specifications included in the Integrated Wet Weather Control Plan included at Appendix C that must be met in designing and constructing Control Measures required by this Consent Decree.

5

      m.     "Dry Weather" shall mean a period in which there has not been a measurable precipitation event (greater than 0.01 inches) within the preceding twenty-four-hour period. A measurable precipitation event may include the impact of snow melt even when there has been no precipitation in the preceding 24-hour period.

      n.     "Dry Weather Overflow" shall mean any CSO during Dry Weather.

      o.     "Effective Date" shall have the definition provided in Section XVII (Effective Date).

      p.     "Elyria" or "City" shall mean the Defendant City of Elyria, Ohio.

      q.     "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

      r.     "Integrated Wet Weather Control Plan" or "Plan" shall mean the plan attached to this Consent Decree as Appendix C and any revisions to the Plan that have been approved by EPA, after consultation with the Ohio EPA.

      s.     "MGD" or "mgd" shall mean million gallons per day.

      t.     "NPDES Permit" or "Permit" shall mean NPDES Permit No. 3PD00034*MD (OH0025003) issued to Elyria by Ohio EPA on May 12, 2021, effective on June 1, 2021, or as subsequently modified or reissued and legally in effect (i.e., the Permit is not stayed).

      u.     "Ohio EPA" shall mean the Ohio Environmental Protection Agency and any successor departments or agencies of the State.

      v.     "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

      w.     "Parties" shall mean the United States, the State, and Elyria.

      x.     "Performance Criteria" shall mean the numeric and narrative requirements included for each Control Measure in the Integrated Wet Weather Control Plan set forth in Appendix C.

      y.     "Private Lateral" shall mean pipes and any other appurtenances not owned or operated by Elyria that are used to convey wastewater from a building or buildings to the Sewer System.

      z.     "Receiving Waters" shall mean the Black River and its tributaries.

      aa.     "Sanitary Sewer Overflow" or "SSO" shall mean any discharge of municipal sewage from Elyria's Sewer System to Receiving Waters, except for CSOs. Known locations of SSOs are included in Appendix B.

bb.     "Section" shall mean a portion of this Consent Decree that has a heading identified by an upper-case Roman numeral.

cc.     "Sewer System" shall mean the collection and conveyance system owned or operated by Elyria that is designed and constructed to collect and convey municipal sewage in a single pipe to the WWTP, to collect and convey municipal sewage and stormwater in a single pipe to Elyria's WWTP or to a CSO Outfall, and to collect and convey stormwater only in a single pipe to the Receiving Waters. "Sewer System" does not include Private Laterals or the WWTP.

dd.     "State" shall mean the State of Ohio.

ee.     "Unauthorized Release" shall mean any overflow, spill, diversion, or release of municipal sewage from Elyria's Sewer System, except for CSOs. For purposes of this Consent Decree, "Unauthorized Release" shall include Building/Private Property Backups.

ff.     "United States" shall mean the United States of America, acting on behalf of EPA.

gg.     "Wastewater Treatment Plant" or "WWTP" shall mean the wastewater treatment plant owned and operated by Elyria and located at 1194 Gulf Road, Elyria, Ohio, and any future wastewater treatment facilities connected to the Sewer System.

## VI.  COMPLIANCE REQUIREMENTS

9.     <u>Permanent Injunction</u>. Elyria shall achieve and maintain full compliance with the terms and conditions of its NPDES Permit, including compliance with effluent limitations therein; the CWA, 33 U.S.C. § 1251 *et seq.*, and the rules promulgated thereunder; Ohio Rev. Code Ann. § 6111 and the rules promulgated thereunder; and the compliance measures and the schedules set forth below.

10.     <u>Prohibited Releases and Discharges</u>. Unauthorized Releases and Dry Weather Overflows are prohibited.

11.     <u>Integrated Wet Weather Control Plan Implementation</u>.  Elyria shall perform the activities and construct and operate the Control Measures in accordance with the Design Criteria and by the Achievement of Full Operation Critical Milestone dates in the Integrated Wet Weather Control Plan ("Plan") as set forth in Appendix C. Elyria shall ensure that all Control Measures are designed and operated in accordance with sound engineering practices and to ensure Performance Criteria will be achieved. Each Control Measure in Appendix C is identified as occurring in either Stage I or Stage II. Stage I consists of Control Measures that shall Achieve Full Operation by or before December 31, 2034, as more specifically identified in Appendix C. Stage II consists of Control Measures that shall Achieve Full Operation over the subsequent 10 years of implementation with Control Measures Achieving Full Operation during the first three-year period of Stage II (i.e., January 1, 2035 – December 31, 2037), the next grouping of Control Measures Achieving Full Operation during the next three-year period (i.e., January 1, 2038 – December 31, 2040) and the remaining Control Measures Achieving Full Operation during the

7

final four years (January 1, 2041 – December 31, 2044), as more specifically described in Appendix C. All Control Measures must Achieve Full Operation by December 31, 2044 ("Plan Completion Date").

       a.     By December 31, 2032, Elyria may submit an update to the Stage II Control Measures ("Stage II Plan Update") for review and approval by EPA, in consultation with Ohio EPA, that revises or updates Control Measures, including Design Criteria and a revised schedule for each Control Measure's Achievement of Full Operation Critical Milestone date, provided the following: (i) Elyria demonstrates that the Stage II Plan Update will provide equal or greater environmental system-wide benefit as compared to the Stage II Control Measures in Appendix C at the time the Court enters this Consent Decree; (ii) the Performance Criteria as identified in Appendix C will be met; (iii) the Achievement of Full Operation Critical Milestone dates for the revised Critical Milestones follow the three-year, three-year, four-year approach described above, or another similar approach that ensures Control Measures are being completed over the course of Stage II; and, (iv) the Plan Completion Date will be met. The Stage II Plan Update shall incorporate any swapping of projects undertaken in accordance with Subparagraph 11.b. Upon approval by EPA, in consultation with Ohio EPA, Elyria shall implement the Stage II Plan Update as approved and the Stage II Plan Update shall be incorporated into and amends Appendix C and becomes an enforceable requirement under this Consent Decree.

       b.     Elyria may, upon written notice to EPA and the State, move any Stage II Control Measure from Appendix C into Stage I, in which case Elyria may defer a corresponding amount of St. Jude / Eastern Heights rainfall-derived inflow and infiltration ("RDI/I") control work, as required by Control Measure 8, to Stage II. This "swapping" of Control Measures does not require a modification of this Consent Decree as it is only a change in priority and scheduling, without changing the Design Criteria or Performance Criteria and without affecting the Plan Completion Date. Elyria shall complete the Stage II Project moved forward to Stage I expeditiously, and in no case shall it Achieve Full Operation later than December 31, 2034. Likewise, Elyria shall complete the deferred St. Jude / Eastern Heights RDI/I control work by December 31, 2044. The notice shall include: (i) the identification of Control Measure(s) from Stage II that are being moved to Stage I; (ii) the specifics of Control Measure 8 RDI/I work that is being moved to Stage II; (iii) the revised scheduling for the swapped Control Measure(s) and RDI/I work; and (iv) the method by which Elyria is defining and quantifying the corresponding amount of work swapped between Stage I and Stage II.

       c.     Where Control Measures identified in Appendix C require work on private property, requiring access and cooperation of property owners, Elyria shall make best efforts to obtain access. Should Elyria be unsuccessful in gaining access to private property, Elyria may, upon written notice to EPA and the State, implement additional RDI/I control work or additional sewer system rehabilitation work on public property to remove an equivalent amount of RDI/I remaining in the Sewer System as a result of the owners' refusal to grant access to private property. The notice shall include: (i) the address of each property to which Elyria has been unsuccessful in gaining access to implement RDI/I control work; (ii) the Appendix C Control Measure to which each property identified in 11.c.i corresponds; (iii) an estimate of the total amount of RDI/I that will not be removed due to the denial of access to private property; (iv) the specific RDI/I control work or sewer system rehabilitation work and the location(s) of that work that Elyria intends to perform to remove an equivalent amount of RDI/I remaining in the Sewer

System; (v) the method by which Elyria quantified the RDI/I equivalency; and (vi) the proposed schedule for completion of the alternative work by no later than December 31, 2044. In the event that the alternative work cannot be completed by the deadline set forth in Appendix C for the specific Control Measure about which Elyria is notifying EPA and the State pursuant to this paragraph, Elyria's notice shall include a request for an extension for review and approval. EPA, in consultation with Ohio EPA, will review and may approve an extension of no more than six months without modification of the Consent Decree.

12.    <u>Adaptive Management for Integrated Wet Weather Control Plan Control Measures</u>.  No less than two years prior to the date of Achievement of Full Operation for Control Measures 1-3 and 6-21 in Appendix C, Elyria may submit a proposal to EPA for review and approval, in consultation with Ohio EPA, to revise and/or provide alternative Control Measure(s). Elyria will provide additional advance time for EPA review of more complex proposals, as appropriate. Each proposal for a revised and/or alternative Control Measure(s) shall:

a.    Provide detailed project information (such as the size and length of new sewer lines, sewer infrastructure rehabilitation, number of inflow source disconnections or storage capacity; the volume of storage, or scope of sewer separation activities; and the anticipated discharge volume reduction or level of service);

b.    Include an implementation schedule for completion of the revised and/or alternative Control Measure(s) by the same Achievement of Full Operation date as the original Control Measure(s) set forth in Appendix C; and

c.    Demonstrate that any revised and/or alternative Control Measure(s) that propose any change to the Design Criteria in Appendix C will achieve equal or better environmental benefits, as demonstrated by meeting or exceeding the Performance Criteria associated with the original Control Measure(s); and

d.    Include a description of the public engagement process concerning the revised and/or alternative Control Measures.

EPA disapproval of a request under this Paragraph is subject to Section XII (Dispute Resolution) of this Consent Decree under the standard of review set forth in Subparagraph 64.a. (Disputes Concerning Matters Accorded Record Review). For purposes of this Consent Decree, EPA approval of a proposed revised and/or alternative Control Measure(s) consistent with the criteria identified in subparagraphs (a) through (c) above shall not be considered a Modification pursuant to Section XIX of the Decree.

13.    <u>Post-Construction Monitoring</u>.  Elyria shall conduct post-construction monitoring and submit all required post-construction monitoring-related plans, reports, and notices in accordance with provisions set forth in Appendix D and to meet the following objectives: (a) evaluate the performance of the Control Measures required by Appendix C; and (b) assess the effect of discharges from Elyria's Sewer System on the water quality of the Black River. To meet these objectives, Elyria shall complete all post-construction monitoring activities, which includes monitoring, modeling, and the submission of all required plans, reports, and notices, for

all Control Measures. Elyria shall complete all post-construction monitoring activities for Control Measure 4 pursuant to the requirements and deadlines set forth in Section 2 of Appendix D. Elyria shall conduct all post-construction monitoring activities for Control Measure 5 pursuant to the requirements and deadlines set forth in Section 3 of Appendix D. Elyria shall complete all post-construction monitoring activities for Control Measures 1-3 and 6-21 ("Sewer System Overflow Control Measures") pursuant to the requirements and deadlines set forth in Section 4 of Appendix D. Unless otherwise stated in Appendix D, Elyria shall submit all required submissions to EPA and Ohio EPA for review and approval by EPA in consultation with Ohio EPA.

14.     Monitoring at CSO Outfalls and SSO Locations.

a.     Within one year after the Date of Lodging, Elyria shall install, operate, and maintain flow metering, measuring, and recording equipment capable of continuously, reliably, and accurately measuring and recording the flow rate, flow duration (including start and end times), and flow volume of CSOs and SSOs at a subset of locations as denoted in Appendices A and B.

b.     Two years after Achieving Full Operation of all Control Measures required by Appendix C for which a given CSO or SSO is listed as an Affected Overflow, Elyria may submit a request to EPA to cease the monitoring required by Paragraph 14(a) at that CSO or SSO. The CSOs to which this paragraph applies are denoted in Appendix A. Elyria's request shall include two years of monitoring data for that CSO or SSO and the rainfall records for each storm during which an overflow from that CSO or SSO occurred in that two year period.

15.     Public Notification of CSOs and SSOs. To inform the public of CSOs and SSOs, Elyria shall comply with the notification requirements set forth in its NPDES Permit or as otherwise required by applicable state laws and regulations. Additionally, for SSOs that reach Receiving Waters, Elyria shall follow the public notification procedures in Paragraph 14(e) of Appendix E.

16.     Sanitary Sewer Lateral Rehabilitation Loan Program.  For the duration of this Consent Decree, Elyria shall continue implementing a Sanitary Sewer Lateral Rehabilitation Loan Program ("Lateral Loan Program") in a manner substantially similar to the program currently codified in Section 932.31 of the Codified Ordinances of the City of Elyria, Ohio, attached hereto as Exhibit 1. Within 30 Days of the Effective Date, Elyria shall promote and publicize the Lateral Loan Program by creating an active hyperlink on Elyria's public website that directs residents to the Lateral Loan Program. By one year following the Effective Date and, once per year thereafter for the duration of this Consent Decree, Elyria shall include informational material on the Lateral Loan Program in all residents' water and sewer bills.

17.     Backup Log.  Elyria shall maintain a log of the release of municipal sewage (that may or may not also include stormwater) into a building or onto private property reported to or otherwise known to Elyria (the "Backup Log"). On March 2 and August 30 after the Effective Date and continuing on March 2 and August 30 of each year until termination of this Consent Decree, Elyria shall provide a copy of the Backup Log covering the time periods July-December and January-June, respectively, to EPA and the State. The Backup Log shall include an

10

approximate location, date, time, and volume of the release, if known. For all such releases that are determined to be Building/Private Property Backups, Elyria shall include the following information if known:

        a.     estimated date and time when the Building/Private Property Backup started and stopped;

        b.     location of property where Building/Private Property Backup occurred (address, distance from nearest cross streets, and/or coordinates);

        c.     CSO or SSO tributary area, corrective action area, or neighborhood in which the property is located;

        d.     estimated volume of the Building/Private Property Backup;

        e.     cause(s) or suspected cause(s) of the Building/Private Property Backup (e.g. grease blockage, pipe defect, etc.);

        f.     disposal location of the Building/Private Property Backup (e.g. drained back to sanitary sewer, pumped out to street, etc.); and

        g.     steps taken or planned by Elyria to minimize recurrence of and mitigate the impact of the backup, including future Appendix C Control Measures.

18.     <u>Capacity, Management, Operations and Maintenance (CMOM) Program</u>. No later than 12 months after the Effective Date, Elyria shall submit to EPA for review and approval, after consultation with the Ohio EPA, a Capacity, Management, Operations and Maintenance ("CMOM") Program that is consistent with the CSO Policy;  EPA's Guide for Evaluating Capacity, Management, Operation, and Maintenance (CMOM) Programs at Sanitary Sewer Collection Systems, EPA Doc. 305-B-05-002, January 2005 ("CMOM Guidance"); Elyria's NPDES Permit; and that includes all of the elements described in the attached Appendix E ("CMOM Program Requirements"). The CMOM Program need not include sewers that collect and convey only stormwater.

19.     At least once every two years, Elyria shall review its CMOM Program and revise the Program as necessary to ensure that the CMOM Program reflects current procedures for and conditions in Elyria's Sewer System (excluding sewers that collect and convey only stormwater) and is achieving the goals contained therein. Elyria shall submit to EPA for review and approval, after consultation with the Ohio EPA, any substantive updates, changes, or revisions to the CMOM Program during the pendency of this Consent Decree prior to any implementation of the revised CMOM Program.

20.     Elyria shall implement the CMOM Program as approved by EPA, after consultation with the Ohio EPA.

11

## VII. REVIEW, APPROVAL, AND IMPLEMENTATION OF DELIVERABLES

21.     Approval of Deliverables. After review of any Deliverable that is required to be submitted pursuant to this Consent Decree, EPA, after consultation with the Ohio EPA, shall in writing: (a) approve the submission; (b) approve part of the submission and disapprove the remainder; or (c) disapprove the submission.

22.     Approved Deliverables. If the Deliverable is approved pursuant to Subparagraph 21(a), Elyria shall take all actions required by the Deliverable in accordance with the schedules and requirements of the Deliverable as approved. If the Deliverable is approved only in part pursuant to Paragraph 21(b), Elyria shall, upon written direction from EPA, take all actions required by the approved portions of the Deliverable that EPA, after consultation with the Ohio EPA, determines are technically severable from any disapproved portions. Following EPA approval of any submission or portion thereof, such Deliverable or portion thereof so approved shall be incorporated into and become enforceable under this Consent Decree. Implementation of any approved portion of a Deliverable shall not relieve Elyria of any liability for stipulated penalties for any deficient portion of the Deliverable.

23.     Disapproved Deliverables. If the submission is disapproved in whole or in part pursuant to Subparagraph 21(b) or (c), Elyria shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit to EPA the Deliverable, or disapproved portion thereof, for approval. If the resubmission is approved in whole or in part, Elyria shall proceed in accordance with Paragraph 22.

24.     Resubmitted Deliverables. If a resubmitted Deliverable, or portion thereof, is disapproved in whole or in part, EPA, after consultation with the Ohio EPA, may again require Elyria to correct any deficiencies, in accordance with Paragraph 23. EPA also retains the right to modify any disapproved portion of the resubmitted Deliverable. Upon EPA's correction of any such deficiencies, the resubmitted Deliverable, or portion thereof, shall be incorporated into and become enforceable under this Consent Decree and Elyria shall take all actions to immediately implement the EPA-corrected Deliverable in accordance with the schedules and/or terms of the Deliverable as approved, subject to Elyria's right to invoke Dispute Resolution under Section XII (Dispute Resolution) of this Consent Decree and the right of EPA and the State to seek stipulated penalties as set forth in Section X (Stipulated Penalties).

25.     Any stipulated penalties applicable to the original submission, as provided in Section X, shall accrue during the 45-day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Elyria's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

26.     Permits. Where any compliance obligation under this Section requires Elyria to obtain a federal, state, or local permit or approval, Elyria shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Elyria may seek relief under the provisions of Section XI (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any

permit or approval required to fulfill such obligation, if Elyria has submitted timely and complete applications and has taken all other actions necessary to obtain any such permits or approvals.

## VIII.  REPORTING REQUIREMENTS

27.    <u>Semi-Annual Progress Reports</u>. On January 31 and July 31 after the Effective Date and continuing on January 31 and July 31 of each year until termination of this Consent Decree, Elyria shall submit to EPA and the State a progress report regarding the implementation of the requirements of this Decree in the preceding six months ("Semi-Annual Progress Report"). The Semi-Annual Progress Report shall include at a minimum:

a.    a statement setting forth the deadlines and other terms that Elyria is or was required to meet by this Consent Decree since the date of the last Semi-Annual Progress Report, whether and to what extent Elyria has met these requirements, and the reasons for any noncompliance;

b.    for each Control Measure listed in Appendix C: (i) a general description of the work completed during the reporting period to comply with the requirements of this Decree; (ii) a projection of work to be performed pursuant to this Decree during the next reporting period; (iii) a statement about whether or not each Control Measure is on schedule and expected to meet the AFO critical milestone date; (iv) the status of any post-construction monitoring activities done pursuant to Appendix D; and (v) for any Control Measure for which the AFO is expected to be delayed, a description of the reasons for the delay and the anticipated final AFO critical milestone date. For any Control Measure, if there was no work done during a reporting period or there is no work projected to be done in the next reporting period, Elyria shall include the listing of the specific Control Measure in each Semi-Annual Progress Report and specify that no work was done or no work is projected to be done. The identification of any known or anticipated schedule delay or missed AFO critical milestone date in any Semi-Annual Progress Report does not excuse the delay or any missed AFO critical milestone date.

c.    all required Semi-Annual Progress Report requirements set forth in Section 3.10 of Appendix D;

d.    a summary of all material problems or potential problems encountered during the reporting period, and the actions taken to rectify the problems;

e.    a summary of material contacts with EPA and Ohio EPA during the reporting period, including but not limited to the date deliverables under this Decree were sent to EPA and Ohio EPA;

f.    a statement of any exceedance of NPDES Permit limitations;

g.    a summary of all CSOs, SSOs, Dry Weather Overflows, Unauthorized Releases (except for the Backup Log required by Paragraph 17), and Bypasses occurring within the reporting period, including the actual or estimated frequency, location, duration, and volume of each CSO, SSO, Dry Weather Overflow, Unauthorized Release, and Bypass; and

13

       h.     a copy of all Discharge Monitoring Reports for all CSOs and Bypasses that occurred in the reporting period.

28.     In addition to the reports required pursuant to this Section, if Elyria violates any provision of this Consent Decree or its NPDES Permit, or believes there is a high likelihood that Elyria will not meet any of the AFO critical milestone dates set forth in Appendix C, Elyria shall notify EPA and the State of such violation or anticipated delay in writing within 10 business days after Elyria knew or should have known of the violation or the anticipated delay. Elyria shall explain the likely cause of the violation or anticipated delay and the remedial steps taken, or to be taken, to prevent or minimize such violation or anticipated delay. If the cause of a violation or anticipated delay cannot be fully explained at the time the report is due, Elyria shall so state in the report. Elyria shall investigate the cause of the violation or anticipated delay and shall then submit an amendment to the report, including a full explanation of the cause of the violation or anticipated delay, within 30 Days of the day Elyria becomes aware of the cause of the violation or anticipated delay. Nothing in this Paragraph or the following Paragraph relieves Elyria of its obligation to provide the notice required by Section XI (Force Majeure).

29.     Whenever any violation of this Consent Decree or any other event affecting Elyria's performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Elyria shall notify EPA and the State orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Elyria first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

30.     All reports shall be submitted to the persons designated in Section XVI (Notices).

31.     Each report submitted by Elyria under this Section shall be signed by an Elyria official and include the following certification:

*I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.*

32.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

33.     The reporting requirements of this Consent Decree do not relieve Elyria of any reporting obligations required by its NPDES Permit, the CWA and the rules promulgated thereunder, Ohio Rev. Code Ann. § 6111 and the rules promulgated thereunder, and any other federal, state, or local law, regulation, permit, or other requirement.

34.    Any information provided pursuant to this Consent Decree may be used by the United States or the State in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## IX.  CIVIL PENALTY

35.    By no later than 30 Days after the Effective Date of this Consent Decree, Elyria shall pay to the United States a civil penalty in the amount of $100,000.

36.    Elyria shall pay the civil penalty by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with written instructions to be provided to Elyria by the Financial Litigation Unit ("FLU") of the U.S. Attorney's Office for the Northern District of Ohio after the Effective Date. The costs of such EFT shall be Elyria's responsibility. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Elyria shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

> Wendlene M. Lavey, Esq.
> McMahon DeGulis LLP
> 812 Huron Road, Suite 650
> Cleveland, Ohio 44115

on behalf of Elyria. Elyria may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XVI (Notices).

At the time of payment, Elyria shall send notice that the payment has been made, in the form of a copy of the EFT authorization form, the EFT transaction record, and a transmittal letter: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; and (ii) to the United States, EPA, and the State via email or regular mail in accordance with Section XVI (Notices). The transmittal letter shall state that the payment is for the civil penalty owed pursuant to this Consent Decree in United States and the State of Ohio v. The City of Elyria, Ohio, and shall reference the civil action number, CDCS number, and DOJ case number 90-5-1-1-2155/1.

37.    By no later than 30 Days after the Effective Date of this Consent Decree, Elyria shall remit $100,000.00 as a supplemental environmental project to improve water quality to Ohio EPA's Surface Water Improvement Fund created in Ohio Revised Code Section 6111.0382 to Ohio EPA by a check made payable to "Treasurer, State of Ohio." The check shall be submitted to Carol Butler, or her successor, together with a letter identifying the Respondent, to:

> Ohio EPA
> Office of Fiscal Administration
> P.O. Box 1049
> Columbus, Ohio 43216-1049

At the time of payment, Elyria shall simultaneously send written notice of the check and a copy of any transmittal documentation (which should reference the above-captioned case name and

15

civil action number, CDCS number, and DOJ case number 90-5-1-1-2155/1) to Plaintiffs in accordance with Section XVI (Notices) of this Consent Decree.

38.     Elyria shall pay interest on any unpaid balance of the civil penalty owed to the State, which shall begin to accrue at the end of the 30 day period described above, utilizing the calculation method set forth in Ohio Rev. Code Ann. § 5703.47.

39.     Upon entry of this Decree, this Decree shall constitute an enforceable judgment for purposes of post-judgment collection in accordance with Rule 69 of the Federal Rules of Civil Procedure, the Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3001-3308, and other applicable federal authority. The United States and the State will be deemed judgment creditors for purposes of collection of any unpaid amounts of the civil and stipulated penalties and interest.

## X.  STIPULATED PENALTIES

40.     Elyria shall be liable for stipulated penalties to the United States and the State for violations of this Consent Decree as specified below, unless excused under Section XI (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

41.     <u>Late Payment of Civil Penalty</u>. Elyria shall accrue the following stipulated penalty if Elyria fails to pay the civil penalty required to be paid under Section IX (Civil Penalty) when due: $500.00 per Day for each Day that the payment is late, in addition to interest on the outstanding civil penalty, as provided in 28 U.S.C. § 1961, accruing from the Date of Entry.

42.     <u>Reporting Requirements</u>. Elyria shall accrue the following stipulated penalties for each violation of the reporting requirements of Section VIII (Reporting Requirements) or each failure to submit a timely and adequate plan, report, schedule, written notice, or other deliverable required by this Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 30th Day |
| $500 | 31st through 60th Day |
| $750 | 61st Day and beyond |

43.     <u>Dry Weather Overflows</u>. Elyria shall accrue a stipulated penalty of $1,500 for each Dry Weather Overflow.

44.     <u>SSOs</u>. The following stipulated penalties shall accrue per violation per Day for SSO:

| Penalty Per Violation Per Day | Occurrence of Noncompliance |
|---|---|
| $250 | Prior to or on December 31, 2031 |
| $750 | After December 31, 2031 |

45.     Unauthorized Releases. The following stipulated penalties shall accrue per violation per Day for each Unauthorized Release other than SSOs:

| Penalty Per Violation Per Day | Occurrence of Noncompliance |
|---|---|
| $250 | Prior to or on December 31, 2031 |
| $500 | January 1, 2032 through December 31, 2034 |
| $750 | After December 31, 2034 |

46.     Compliance Milestones. Elyria shall accrue the following stipulated penalties for each failure to comply with a requirement or meet a deadline specified in Section VI, Paragraphs 9-20, of this Consent Decree, or to Achieve Full Operation by the date of any Critical Milestone set forth in Appendix C:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 30th Day |
| $750 | 31st through 60th Day |
| $1,500 | 61st Day and beyond |

47.     Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

48.     Elyria shall pay any stipulated penalties to the United States and the State within 30 Days of receiving a written demand by either Plaintiff. Elyria shall pay 50% of the total stipulated penalty amount due to the United States and 50% to the State in the manner set forth and with the confirmation notices required by Paragraphs 36 and 37, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

49.     Either Plaintiff may in the unreviewable exercise of their discretion, reduce or waive its respective portion of stipulated penalties otherwise due it under this Consent Decree.

50.     Stipulated penalties shall continue to accrue as provided in Paragraph 47, during any Dispute Resolution, but need not be paid until the following:

        a.      If the dispute is resolved by agreement or by a decision of EPA or the State that is not appealed to the Court, Elyria shall pay accrued penalties determined to be owing, together with interest, to the United States and the State within 30 Days of the effective date of the agreement or the receipt of EPA's or the State's decision or order.

        b.      If the dispute is appealed to the Court and the United States or the State prevails in whole or in part, Elyria shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in Subparagraph c, below.

17

c.      If any Party appeals the District Court's decision, Elyria shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

51.     If Elyria fails to pay stipulated penalties according to the terms of this Consent Decree, Elyria shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for Elyria's failure to pay any stipulated penalties.

52.     The payment of penalties and interest, if any, shall not alter in any way Elyria's obligation to complete the performance of the requirements of this Consent Decree.

53.     Subject to the provisions of Section XIV (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Elyria's violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of the Clean Water Act or the NPDES Permit, Elyria shall be allowed a credit for any stipulated penalties paid against any statutory penalties imposed for such violation.

## XI.  FORCE MAJEURE

54.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Elyria, of any entity controlled by Elyria, or of Elyria's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Elyria's best efforts to fulfill the obligation. The requirement that Elyria exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Elyria's financial inability to perform any obligation under this Consent Decree.

55.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure, Elyria shall notify EPA and the State within 72 hours of when Elyria first knew that the event might cause a delay. Within 14 Days thereafter, Elyria shall provide in writing to EPA and the State: (a) an explanation and description of the reasons for the delay; (b) the anticipated duration of the delay; (c) all actions taken or to be taken to prevent or minimize the delay; (d) a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; (e) Elyria's rationale for attributing such delay to a force majeure if it intends to assert such a claim; and (f) a statement as to whether, in the opinion of Elyria, such event may cause or contribute to an endangerment to public health, welfare or the environment. Elyria shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Elyria from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Elyria shall be deemed to know of

18

any circumstance of which Elyria, any entity controlled by Elyria, or Elyria's contractors undertaking the obligation in question knew or reasonably should have known.

56.   If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation. EPA will notify Elyria in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

57.   If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify Elyria in writing of its decision.

58.   If Elyria elects to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Elyria shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Elyria complied with the requirements of Paragraphs 54 and 55. If Elyria carries this burden, the delay at issue shall be deemed not to be a violation by Elyria of the affected obligation of this Consent Decree identified to EPA and the Court.

## XII.  DISPUTE RESOLUTION

59.   Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Elyria's failure to seek resolution of a dispute under this Section shall preclude Elyria from raising any such issue as a defense to an action by the United States or the State to enforce any obligation of Elyria arising under this Decree.

60.   <u>Informal Dispute Resolution</u>. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Elyria sends the United States and the State a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Elyria invokes formal dispute resolution procedures as set forth below.

61.   <u>Formal Dispute Resolution</u>.

a.   Elyria shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and the State a

19

written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Elyria's position and any supporting documentation relied upon by Elyria.

       b.     The United States shall serve its Statement of Position (after consultation with the State) within 45 Days of receipt of Elyria's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Elyria, unless Elyria files a motion for judicial review of the dispute in accordance with the following Paragraph.

       62.     Elyria may seek judicial review of the dispute by filing with the Court and serving on the United States and the State, in accordance with Section XVI (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 30 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Elyria's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of this Consent Decree.

       63.     The United States shall respond to Elyria's motion within the time period allowed by the Local Rules of this Court. Elyria may file a reply memorandum, to the extent permitted by the Local Rules.

       64.     <u>Standard of Review</u>.

       a.     <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Consent Decree, in any dispute brought under this Section pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree, including, but not limited to, the performance of the compliance measures under Section VI (Compliance Requirements) or any appendices; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Elyria shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

       b.     <u>Other Disputes</u>. Except as otherwise provided in this Consent Decree, in any other dispute brought under this Section, Elyria shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the Objectives of this Consent Decree.

       65.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Elyria under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 50. If Elyria does not

prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X (Stipulated Penalties).

## XIII.  RIGHT OF ENTRY AND INFORMATION COLLECTION AND RETENTION

66.    The United States, the State, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into and upon Elyria's WWTP and Sewer System, at all reasonable times, upon presentation of credentials, to:

       a.    monitor the progress of activities required under this Consent Decree;

       b.    verify any data or information submitted to the United States or the State in accordance with the terms of this Consent Decree;

       c.    obtain samples and, upon request, splits of any samples taken by Elyria or its representatives, contractors, or consultants;

       d.    obtain documentary evidence, including photographs and similar data regarding Elyria's compliance with this Consent Decree; and

       e.    assess Elyria's compliance with this Consent Decree.

67.    Upon request, Elyria shall provide EPA and the State or its authorized representatives splits of any samples taken by Elyria. Upon request, EPA and the State shall provide Elyria splits of any samples taken by EPA or the State.

68.    Until five years after the termination of this Consent Decree, Elyria shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Elyria's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or the State, Elyria shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

69.    At the conclusion of the information-retention period provided in the preceding Paragraph, Elyria shall notify the United States and the State at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, Elyria shall deliver any such documents, records, or other information to EPA or the State. Elyria may assert that certain documents, records, or other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Elyria asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Elyria.

21

However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

70.     Elyria may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Elyria seeks to protect as CBI, Elyria shall follow the procedures set forth in 40 C.F.R. Part 2.

71.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Elyria to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

### XIV.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

72.     Upon approval and entry of this Consent Decree by the Court, the Consent Judgment in *United States v. City of Elyria and State of Ohio*, Civil Action No. C84-3729 (N.D. Ohio May 19, 1986) shall be terminated.

73.     This Consent Decree resolves the civil claims of the United States and the State for the violations alleged in the Complaint filed in this action through the Date of Lodging.

74.     The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or injunctive relief under the CWA and the rules promulgated thereunder, Ohio Rev. Code Ann. § 6111 and the rules promulgated thereunder, or under other federal or state laws, regulations, or permit conditions, except as expressly stated in Paragraph 73. The United States and the State further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Elyria's WWTP and Sewer System, whether related to the violations addressed in this Consent Decree or otherwise.

75.      In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, or other appropriate relief relating to Elyria's WWTP or Sewer System, Elyria shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 73.

76.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Elyria is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Elyria's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any

manner that Elyria's compliance with any aspect of this Consent Decree will result in compliance with provisions of Elyria's NPDES Permit, the CWA and the rules promulgated thereunder, Ohio Rev. Code Ann. § 6111 and the rules promulgated thereunder, or any other federal, state, or local law, regulation, permit, or other requirement.

77.     Ohio will have no financial liability under this Consent Decree, except as required by Section 309(e) of the CWA in the event that the laws of Ohio prevent Elyria from raising revenues needed to comply with this Consent Decree. The Attorney General of the State of Ohio hereby certifies that the present laws of Ohio do not prevent Elyria from raising revenues needed to comply with this Consent Decree.

78.     This Consent Decree does not limit or affect the rights of Elyria or of the United States or the State against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Elyria, except as otherwise provided by law.

79.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XV.  COSTS

80.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the State shall be entitled to collect the costs (including attorneys' fees) against Elyria incurred in any action necessary to enforce this Consent Decree or to collect any portion of the civil penalty or any stipulated penalties due but not paid by Elyria.

## XVI.  NOTICES

81.     Unless otherwise specified in this Consent Decree, whenever notifications, submissions, or communications are required by this Decree, they shall be made in writing and addressed as described below. All notifications, submissions, or communications to EPA Region 5 shall be submitted, to the extent possible, via e-mail. The subject line of all e-mail correspondence must include the facility name, NPDES ID # (OH0025003), subject of the deliverable, and the docket number (22-cv-XXXX). If Defendant is unable to submit all notifications, submissions, or communications to EPA Region 5 via email, Defendant shall provide all submissions required by this Consent Decree to the mailing addresses listed below in electronic format on physical media such as compact disk, flash drive or other similar item. All electronic submissions should be in Portable Document Format ("PDF") or similar format, unless otherwise noted. If the PDFs are scanned images, Defendant shall perform Optical Character Recognition for "image over text" to allow the document to be searchable. If data are submitted in electronic spreadsheet form, the Defendant shall provide the data and corresponding information in editable Excel format, not in image format. If Excel format is not available, then the electronic format submitted should allow for data to be used in calculations by a standard spreadsheet program such as Excel.

As to the United States Department of Justice:

By email:

eescdcopy.enrd@usdoj.gov
Re: DJ # 90-5-1-1-2155/1

By mail:
EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611
Re: DJ # 90-5-1-1-2155/1

As to the United States Attorney for the Northern District of Ohio:

U.S. Attorney for the
Northern District of Ohio
United States Courthouse
801 West Superior Avenue, Suite 400
Cleveland, OH 44113

As to EPA:

Director, Water Enforcement Division
Office of Civil Enforcement
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue NW
Mail Code: 2243-A
Washington, DC 20460

Chief, Water Enforcement and Compliance Assurance Branch
Enforcement and Compliance Assurance Division
U.S. Environmental Protection Agency, Region 5
77 West Jackson Blvd. (ECW-15J)
Chicago, IL 60604
Re: MN0025003, City of Elyria Consent Decree

Christopher Grubb
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 5
77 West Jackson Blvd. (C-14J)
Chicago, IL 60604

As to EPA by e-mail:

R5weca@epa.gov
and

24

grubb.christopher@epa.gov

As to the State:

> Ohio Environmental Protection Agency
> Division of Surface Water
> Attn:  Manager, Permits and Compliance
> P.O. Box 1049
> Columbus, OH 43216-1059
>
> Ohio Environmental Protection Agency
> Northeast District Office
> Division of Surface Water
> Attn:  Enforcement Group Leader
> 2110 E. Aurora Rd.
> Twinsburg, OH 44087
>
> Chief
> Environmental Enforcement Section
> State of Ohio Office of Attorney General
> 30 East Broad Street, 25th Floor
> Columbus, OH 43215-3400

As to the State by e-mail:

> wetweather.npdes@epa.ohio.gov

As to Elyria:

> Hon. Frank Whitfield
> Mayor, City of Elyria
> Elyria City Hall
> 131 Court Street – Suite 301
> Elyria, OH  44035
>
> Amanda R. Deery, Esq.
> Elyria City Law Director
> 131 Court Street
> Elyria, OH 44035
>
> Wendlene M. Lavey
> McMahon DeGulis LLP
> 812 Huron Road, Suite 650
> Cleveland, OH  44115

82.     Any notification, submission, or communication required to be made to the United States shall be made to both the United States Department of Justice and EPA.

25

83.     Any notification, submission, or communication required to be made to EPA shall be made to EPA.

84.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

85.     Notices submitted pursuant to this Section shall be deemed submitted on the date they are mailed or emailed unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVII.  EFFECTIVE DATE

86.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter this Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided however, that Elyria hereby agrees that it shall be bound upon the Date of Lodging to comply with all of its obligations specified in this Consent Decree even if those obligations accrue prior to the Effective Date. In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter this Consent Decree, then the preceding requirement to comply with the requirements of this Consent Decree that accrue prior to the Effective Date shall terminate.

## XVIII.  RETENTION OF JURISDICTION

87.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree, pursuant to Section XII, entering orders modifying this Decree, pursuant to Section XIX, or effectuating or enforcing compliance with the terms of this Decree.

## XIX.  MODIFICATION

88.     The terms of this Consent Decree, including any attached Appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

89.     Defendant's request for modification may be based, among other things, on a current Financial Capability Assessment, which may include additional financial information (per U.S. EPA's Financial Capability Assessment Framework, issued on November 24, 2014). If the Financial Capability Assessment Framework is modified after the Effective Date, the Defendant's request for modification shall be based on the version of the Financial Capability Assessment Framework that is in effect on the day that the request for modification is submitted.

90.     Elyria's request for modification must be based on a demonstration that the modification will result in equal or greater environmental benefit compared to the compliance requirements under this Consent Decree as of the Effective Date. Any modification of this Consent Decree, or any documents that are developed pursuant to the requirements of this Decree and that become a part of the Decree, that effect a material change to the terms of the

26

Decree shall become effective upon a subsequent written agreement signed by all Parties and approved by the Court.

91.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section XII of this Decree (Dispute Resolution). However, instead of the burden of proof provided by Paragraph 64, above, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XX.  TERMINATION

92.     No sooner than twelve months after Elyria has completed the requirements of Section VI (Compliance Requirements), Elyria may submit to the United States and the State a Request for Termination of this Consent Decree, stating that Elyria has satisfied those requirements, together with all necessary supporting documentation. In the Request for Termination, Elyria must demonstrate: (a) that all requirements of Section VI (Compliance Requirements) are complete, including, but not limited to, completion of all construction required by the Integrated Wet Weather Control Plan (Appendix C), and that Elyria has achieved the Design Criteria and satisfied the Performance Criteria for each Control Measure therein; (b) that post-construction monitoring shows the effectiveness of Elyria's Control Measures over the timeframes required by Appendix D; (c) that all civil penalties due and all stipulated penalties demanded under this Decree (and any interest thereon) have been paid; and (d) that Elyria has demonstrated compliance with the requirements of this Consent Decree for a period of one year.

93.     Following receipt by the United States and the State of Elyria's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Elyria satisfactorily has complied with the requirements for termination. If the United States, after consultation with the State, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint motion seeking termination of the Decree.

94.     If the United States, after consultation with the State, does not agree that the Decree may be terminated, Elyria may invoke dispute resolution under Section XII of this Decree. However, Elyria shall not invoke dispute resolution of any dispute regarding termination until 60 Days after service of its Request for Termination.

95.     Regardless of whether Defendant has requested termination of this Consent Decree pursuant to Paragraph 92, the United States, after consultation with the State, may seek the Court's approval to terminate this Consent Decree based upon the United States determination, in consultation with the State, that Defendant has met the requirements for termination in accordance with this Section.

## XXI.  PUBLIC PARTICIPATION

96.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding this Consent

27

Decree disclose facts or considerations indicating that this Consent Decree is inappropriate, improper, or inadequate. Elyria consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of this Decree, unless the United States has notified Elyria in writing that it no longer supports entry of this Decree.

## XXII.  SIGNATORIES/SERVICE

97.     The Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice and each undersigned representative of the State and Elyria certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

98.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Elyria agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXIII.  INTEGRATION

99.     This Consent Decree and its Appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersede all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Decree, the Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree and its Appendices.

100.    The following documents are attached to and integrated into this Consent Decree:

| | |
|---|---|
| "Appendix A" | List of CSOs |
| "Appendix B" | List of specified unpermitted SSO locations identified in the Integrated Wet Weather Control Plan |
| "Appendix C" | Integrated Wet Weather Control Plan |
| "Appendix D" | Post-Construction Monitoring |
| "Appendix E" | Capacity, Management, Operation and Maintenance ("CMOM") Program |

101.    The following documents are attached as exhibits to this Consent Decree:

| | |
|---|---|
| "Exhibit 1" | Section 932.31 of the Codified Ordinances of the City of Elyria |

28

## XXIV.  FINAL JUDGMENT

102.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and Elyria. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED this _____ day of _____, 2023.


_____
United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States and State of Ohio v. City of Elyria (N.D. Ohio).

For Plaintiff
UNITED STATES OF AMERICA

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

10/25/2022
Date

LAUREN GRADY
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Phone: (202) 514-2794
Fax: (202) 616-6584

MICHELLE M. BAEPPLER
Acting United States Attorney
Northern District of Ohio

JACKSON FROLIKLONG
Assistant United States Attorney
U.S. Attorney's Office
United States Courthouse
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
Phone: (216) 622-3818
Fax: (216) 522-2404
Jackson.froliklong@usdoj.gov

30

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States and State of Ohio v. City of Elyria (N.D. Ohio).

For the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

DIANA SAENZ
Digitally signed by DIANA SAENZ
Date: 2022.11.01 15:53:54 -04'00'

_____
Date

DIANA J. SAENZ
Acting Director, Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance

MEGAN KNIGHT
Digitally signed by MEGAN KNIGHT
Date: 2022.11.01 14:34:19 -04'00'

_____
Date

MEGAN KNIGHT
Attorney, Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States and State of Ohio v. City of Elyria (N.D. Ohio).

For the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

10/24/22

Date

ROBERT KAPLAN
Digitally signed by ROBERT KAPLAN
Date: 2022.10.24 20:11:22 -05'00'

ROBERT A. KAPLAN
Regional Counsel
U.S. Environmental Protection Agency, Region 5
77 West Jackson Boulevard
Chicago, Illinois 60604-3590
kaplan.robert@epa.gov
Telephone: (312) 886-1499

10/24/22

Date

CHRISTOPHER GRUBB
Digitally signed by CHRISTOPHER GRUBB
Date: 2022.10.24 08:35:22 -05'00'

CHRISTOPHER GRUBB
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5 (C-14J)
77 West Jackson Boulevard
Chicago, Illinois 60604-3590
grubb.christopher@epa.gov
Telephone: (312) 886-7187

10/24/22

Date

JEFFREY CAHN
Digitally signed by JEFFREY CAHN
Date: 2022.10.24 08:46:57 -05'00'

JEFFREY A. CAHN
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5 (C-14J)
77 West Jackson Boulevard
Chicago, Illinois 60604-3590
cahn.jeffrey@epa.gov
Telephone: (312) 886-6670

32

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States and State of Ohio v. City of Elyria (N.D. Ohio).

For the Plaintiff STATE OF OHIO

DAVE YOST
Ohio Attorney General


L. SCOTT HELKOWSKI (0068623)
Assistant Attorney General
Environmental Enforcement Section
30 E. Broad Street, 25th Floor
Columbus, OH 43215

33

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States and State of Ohio v. City of Elyria (N.D. Ohio).

For the DEFENDANT CITY OF ELYRIA

10/21/2022
Date

HON. FRANK WHITFIELD
Mayor, City of Elyria
131 Court Street – Suite 301
Elyria, OH  44035
fwhitfield@cityofelyria.org
Telephone:  (440) 326-1402
Facsimile:  (440) 326-1426

10/21/2022
Date

AMANDA R. DEERY
Law Director, City of Elyria
131 Court Street – Suite 201
Elyria, OH  44035
adeery@cityofelyria.org
Telephone:  (440) 326-1464
Facsimile:  (440) 326-1466
Ohio Bar # 0077438

34